**Clifford W. PEARSON, Respondent,**

v.

**STATE of Missouri, Appellant.**

**No. WD 68719.**

Missouri Court of Appeals,
Western District.

Jan. 13, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 2009.

Application for Transfer Denied
May 5, 2009.

---

Jamie P. Rasmussen, Jefferson City, Mo, for Appellant.

Susan L. Hogan, Kansas City, MO, for Respondent.

Before: THOMAS H. NEWTON, C.J., JAMES M. SMART, JR., and JAMES EDWARD WELSH, JJ.

THOMAS H. NEWTON, Chief Judge.

The State appeals the circuit court's judgment granting Clifford Pearson's Rule 29.15 post-conviction relief motion based on ineffective assistance of counsel. The motion court concluded that *James v. State,* 222 S.W.3d 302 (Mo.App. W.D.2007) required reversal of Mr. Pearson's conviction. Because the analysis in *James* does not apply to Mr. Pearson's case, the judgment is reversed.

**Factual and Procedural Background**

Ronald Shannon was found dead in his apartment with multiple blunt and sharp force injuries. A bloody kitchen knife and multiple bloodstains were also found in the apartment. Mr. Shannon's car was later located with a broken passenger window, the keys in the ignition, and bloodstains on the driver's side interior. The case remained unsolved for three years.

Sherita Stanley Pearson, Mr. Pearson's wife, was subsequently arrested on unrelated charges. She directed the police to her husband for Mr. Shannon's murder. Subsequent blood samples revealed Mr. Pearson's blood to be a match to that found in Mr. Shannon's apartment and car. Mr. Pearson was charged with first-degree murder and pled not guilty. Burt Haigh served as Mr. Pearson's lead defense counsel.

During voir dire, Mr. Haigh asked the jury panel if any of its members had faced criminal charges in a trial. No one responded. Mr. Haigh then asked if anyone

would find it difficult to presume Mr. Pearson innocent.

MR. HAIGH: That's my question. Because you, as citizens of the United States of America, have not had to go through that process, are you not going to believe that this person, as he instructed you to do, should be and is presumed innocent under the law by you sitting here right now, with the limited facts that you know?

Would it be difficult for someone in this room to presume Mr. Pearson not guilty, knowing that? Anybody feel that way at this point? Yes, sir, what's your name?

VENIREMAN RICE: Bill Rice.

MR. HAIGH: Thank you, Mr. Rice.

VENIREMAN RICE: I'm looking at it in a little bit different direction and I think after listening to all the questions about can you be fair with the prosecution, can you be fair with the defendant, and all of us, me included, think I can do that. But the thing that I have to admit to myself is there is also a subconscious bias with me because—not because I've been mistreated by the police, but because I have always been treated fairly with the police.

So, I almost have a subconscious thought that goes through the back of my mind that how could this be wrong?

MR. HAIGH: Okay.

VENIREMAN RICE: Obviously, somebody—something has happened here.

MR. HAIGH: Right.

VENIREMAN RICE: And they would not go to the expense of all of this. And, you know, the trial hasn't occurred yet, so I understand the presumption of innocence. But I also, having never been dealt with by the police in any way except fairly, it has an almost subconscious ring to it.

MR. HAIGH: My question for you, then, Mr. Rice, is, are you a person that feels like you have the ability to make that decision, to decide that you're going to presume him not guilty because that's what the instruction tells you to do and that's what your role in this process will be or do you feel that because of your past experience that's a decision you really can't make?

It's the situation that's just who you are right now, you can't presume him not guilty or innocent at this stage in the trial? And you're the final arbiter of that.

VENIREMAN RICE: I think I can be fair about it, but I have to admit that there is a bias.

MR. HAIGH: Okay. And we don't have to talk about this in a vacuum. There's been an arrest, there's been accusations made, and evidence gathered, the police have submitted this case to the prosecutor, and he's been charged with a crime, correct? So far, that's all out in the open.

Do you believe that everybody that is accused of a crime by the police in our country is necessarily guilty of that crime?

VENIREMAN RICE: No.

MR. HAIGH: And you think there are bona fide examples of people going to trial and being not guilty?

VENIREMAN RICE: Yes.

MR. HAIGH: And, knowing that, do you think it's within your own ability to make the decision that you're going to hold that presumption of innocence for Mr. Pearson?

VENIREMAN RICE: I think I will carry that primarily.

MR. HAIGH: I'm sorry?

VENIREMAN RICE: I think I would carry that primarily, the presumption of innocence.

MR. HAIGH: Okay. And the prosecutor talked a little bit about how long you have to hold up that presumption of innocence and not make judgments about the case. And one of the most important things that I'd like for the panel to understand is that you hear the opening statements and the evidence and the closing arguments, then when you decide with your fellow jurors and talk about it can you start making decisions.

So, you've got to hold your mind open for quite a while, especially until after closing arguments. That's when the lawyers get the chance to really put the case together for you, the details that you're pulling from the evidence is the only time you'll hear the theory of the defense in this case.

So, do you think it's possible for you to wait and hold your mind open until the deliberation process with your fellow jurors?

VENIREMAN RICE: I think so, yes.

MR. HAIGH: And the last follow-up question for you, Mr. Rice—I think it's working with you here—there's been one oath administered just so far that we would answer the questions fairly. If you're picked as a juror—and everybody should understand this—there's a second oath you'll be taking. And only the jurors impaneled on the case take that oath, and it's to extend that presumption of innocence in this case to Mr. Pearson.

And one of the concerns that people have—and you tell me if this is going to apply to you—is whether you can be true to that oath. And so I think that's my opening question for you, Mr. Rice is if you feel like if you took that oath that you could be true to that oath and hold that presumption open for him?

VENIREMAN RICE: If I couldn't, I wouldn't take the oath.

MR. HAIGH: Do you feel like that's something you're prepared to do?

VENIREMAN RICE: Yes.

Mr. Rice did not speak again during voir dire.

Mr. Haigh made five challenges for cause against other jurors and agreed to ten challenges by the State, but he did not move to strike Mr. Rice, nor did he exercise a peremptory challenge against Mr. Rice. The trial court thought several jurors should be questioned further, but Mr. Rice was not included. Mr. Rice served on the jury. After trial, Mr. Pearson was convicted of first-degree murder. On direct appeal, Mr. Pearson asserted that the evidence was insufficient to prove the element of deliberation beyond a reasonable doubt. We affirmed his conviction and sentence in *State v. Pearson*, 166 S.W.3d 636 (Mo.App. W.D.2005).

Mr. Pearson subsequently filed a *pro se* Rule 29.15 motion. Counsel was appointed and filed an amended motion that argued, *inter alia*, ineffective assistance of trial counsel based on Mr. Haigh's failure to challenge the empaneling of Mr. Rice. The motion court held an evidentiary hearing in March of 2007. At the hearing, it was adduced that Mr. Haigh had ten years experience as a public defender and had served as lead counsel in approximately twenty-five felony trials. Mr. Haigh stated that he had no recollection as to why the defense did not challenge Mr. Rice. He testified he could "certainly" see grounds for removing Mr. Rice because Mr. Rice "indicated he was potentially biased." On cross-examination, Mr. Haigh admitted that Mr. Rice had subsequently indicated he could be fair and evaluate the evidence.

In August of 2007, the motion court issued its judgment and findings of fact and law that included the following pertinent points:

39. During the questioning which is in issue here, Mr. Rice stated: he thought he could be fair; that an accusation is not proof of guilt; that he would keep an open mind; and, if he could not be true to his oath of a juror, he would not take the oath.

40. Mr. Haigh states he thinks the presumption of innocence is working with Mr. Rice. That suggests Mr. Haigh did not believe Mr. Rice needed to be removed.

41. Nothing in Mr. Rice's questionnaire suggests removal is needed.

42. I am not convinced that if a challenge for cause had been made that it would have been granted.[1]

43. Assuming for argument that a for cause strike or peremptory strike had kept Mr. Rice off the jury, I am not convinced there is a reasonable basis to believe the result of the trial would have been different. One of the six people Mr. Haigh did peremptorily strike would have served. There is no reason to assume that person would vote to acquit.

44. My first draft concluded Movant had not met his burden of proof on this issue. That conclusion cannot be reached because of *Chester James v. State of Missouri* [222 S.W.3d 302 (Mo. App. W.D.2007)]; ... *James* discusses an issue like this and holds that the trial court should have granted a motion to strike for cause if one had been made. That is controlling here and this conviction will be reversed. Because of *James* I must conclude failure to move to strike Mr. Rice was ineffective assistance.

(internal citations omitted). The State appeals.

## Standard of Review

Our review of the motion court's decision on a Rule 29.15 motion is limited to determining whether the court's findings and conclusions are clearly erroneous. Rule 29.15(k). We disturb the motion court's decision only if our review of the record leaves us with the definite impression that a mistake has been made. *Anderson v. State,* 196 S.W.3d 28, 33 (Mo. banc 2006).

## Legal Analysis

■ Ineffective assistance of counsel claims are governed by the standards set forth in *Strickland v. Washington,* 466 U.S. 668, 687–92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Worthington v. State,* 166 S.W.3d 566, 572–73 (Mo. banc 2005). To succeed on his claim, Mr. Pearson was required to show: "(1) his counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and (2) his counsel's deficient performance prejudiced him." *Anderson,* 196 S.W.3d at 33.

■ As the Supreme Court emphasized in *Strickland,* judicial scrutiny of counsel's performance is highly deferential. 466 U.S. at 689, 104 S.Ct. 2052. Under the performance prong, trial counsel's actions are presumed reasonable and effective. *Worthington,* 166 S.W.3d at 573. Under the prejudice prong, the movant must show that but for counsel's errors, there is a reasonable probability the outcome of the trial would have been different. *Id.* Both prongs must be established before counsel's performance will render the result unreliable. *Presley v. State,* 750 S.W.2d 602, 605–06 (Mo.App. S.D.1988). However, the *Strickland* test does not establish mechanical rules; our inquiry should be focused on whether the trial result is unreliable because counsel's actions caused a breakdown in the adversari-

---

1. The motion court judge also presided over Mr. Pearson's voir dire and trial. Thus, it would have been his decision whether to grant a motion to strike Mr. Rice.

al process. *Id.* at 606 (quoting *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052).

On appeal, the State argues that the motion court erred by failing to properly apply the *Strickland* test: the motion court found Mr. Pearson had not met his burden on either the performance prong or the prejudice prong, yet then concluded *James* mandated reversal. The State further argues *James* was not decided in line with *Strickland* because it failed to apply the presumption of counsel's effectiveness to the performance prong.

We first address the State's contention that *James* was wrongly decided. In *James,* we reversed the motion court's denial of a Rule 29.15 claim for ineffective assistance, finding that Mr. James's counsel was ineffective for failing to strike a venireperson for cause after she indicated she would draw an adverse inference from a defendant's failure to testify. 222 S.W.3d at 306, 307–08. Significantly, the venireperson never renounced her bias or indicated that she could sidestep it in order to follow her oath: "she was not subsequently rehabilitated." *Id.* at 306. *James* then quoted *State v. McKee* for the proposition that " '[t]he failure to challenge for cause a venireperson who admits to a prejudice against the defendant is ineffectiveness absent an acceptable explanation.' " *Id.* at 307 (quoting 826 S.W.2d 26, 28 (Mo. App. W.D.1992)). "In the case at bar," *James* held, "the motion court did not specifically identify any plausible strategic reason for counsel's failure to challenge" the biased venireperson. *Id.* The State argues that *James*'s analysis of the *Strickland* performance prong is contrary to the law because it fails to start with the presumption of the reasonableness of counsel's performance and erroneously places the burden on the non-movant to show counsel's actions were part of its trial strategy.

However, we read *James* differently and believe both *James* and *McKee,* as well as their predecessor, *Presley,* are in line with *Strickland* and its Missouri progeny. All three cases dealt with counsel's failure to challenge the empaneling of a juror who had admitted to bias and was not subsequently rehabilitated. Because a defendant has an explicit right to a fair and impartial jury, such a blatant failure on the part of counsel overcomes the presumption of effectiveness. *See Presley,* 750 S.W.2d at 606–07. Rather than failing to apply the presumption of reasonableness, these courts implicitly found it had been defeated by counsel's failure to object to a biased juror serving on the panel. Each court then looked to the explanations of counsel to see whether the failure could be justified by a reasonable trial strategy. In both *Presley* and *McKee,* trial counsel articulated no strategy: the failure to challenge the biased venireperson was because counsel confused the members of the panel. *Presley,* 750 S.W.2d at 604–05; *McKee,* 826 S.W.2d at 28. In *James,* trial counsel could not remember why he had not offered a challenge, thus no strategy was shown. *James,* 222 S.W.3d at 307.

In summary, these decisions hold that where a venireperson has admitted significant bias and has not been rehabilitated, counsel's failure to challenge the biased juror overcomes the presumption of effectiveness because of the magnitude of the threat to the defendant's right to a fair trial. " 'The failure to accord an accused a fair hearing violates even the minimal standards of due process.' " *Presley,* 750 S.W.2d at 606 (quoting *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)). Where trial counsel then fails to articulate a reasonable strategy for having the admittedly biased juror on the panel, counsel has failed to exercise the customary skill and diligence of a reasonably competent attorney.

In the case at bar, however, the analysis of *James, McKee,* and *Presley,* does not apply. Because the record does not show Mr. Rice to have been an unqualified juror, the presumption of effectiveness was not overcome by counsel's failure to challenge Mr. Rice's empaneling. Whether a prospective juror is qualified is to be determined from the context of the entire voir dire examination, not from a single response. *State v. Middleton,* 995 S.W.2d 443, 460 (Mo. banc 1999). "The relevant inquiry is whether a prospective juror can follow the law." *State v. Chaney,* 967 S.W.2d 47, 57 (Mo. banc 1998), *cert. denied,* 525 U.S. 1021, 119 S.Ct. 551, 142 L.Ed.2d 458 (1998). Unqualified jurors are those whose views would substantially impair their ability to perform in accordance with the court's instructions and their oath. *Middleton,* 995 S.W.2d at 460. A possibility of prejudice is not sufficient to disqualify a juror: "It must clearly appear from the evidence that the challenged venireperson was in fact prejudiced." *State v. Walton,* 796 S.W.2d 374, 377 (Mo. banc 1990). Mr. Rice's statement that he might have a "subconscious bias" because of being treated fairly by the police was at most vaguely related to the issues at trial; this was not a case, for example, about police misconduct. More importantly, "if the prospective juror states he or she can set aside a stated concern, be fair and impartial, and follow the court's instructions, the prospective juror has been rehabilitated and is qualified to sit on the jury." *Edgar v. State,* 145 S.W.3d 458, 462 (Mo.App. W.D.2004) (internal quotation marks and citation omitted).

In his final statement, Mr. Rice stated unequivocally that he could follow the law and hold the presumption of innocence:

MR. HAIGH: ... Mr. Rice [do] you feel like if you took that oath that you could be true to that oath and hold that presumption [of innocence] open for him?

VENIREMAN RICE: If I couldn't, I wouldn't take the oath.

MR. HAIGH: Do you feel like that's something you're prepared to do?

VENIREMAN RICE: Yes.

Consequently, Mr. Rice was rehabilitated and the record does not show that Mr. Rice's ability to follow the instructions and oath was substantially impaired. If a venireperson unequivocally indicates an ability to evaluate the evidence fairly and impartially, trial counsel is not ineffective for failing to seek removal. *State v. Storey,* 901 S.W.2d 886, 894 (Mo. banc 1995).

Mr. Pearson suggests that *State v. Gary,* 822 S.W.2d 448 (Mo.App. E.D.1991), shows an analogous situation—a juror indicating bias in favor of the police, then giving "firm, unequivocal responses" that he could follow instructions—yet the Eastern District found the juror was unqualified. However, Mr. Pearson's reading of *Gary* is inaccurate. In *Gary,* the biased juror never stated unequivocally that he could follow instructions; the phrase quoted in Mr. Pearson's brief was part of the *Gary* court's discussion of the State's argument. *See id.* at 452. The *Gary* court found the juror's answers, "were not responsive to—and did not directly refute [the juror's] admitted prejudice." *Id.* Moreover, not only was the juror not rehabilitated, there were numerous other factors showing a predilection for the State. The defendant in *Gary* had caused the death of a police officer and most of the prosecution witnesses were police officers. *Id.* Additionally, the juror at issue was an ex-police officer who had served in the same department as the victim, he personally knew or had worked with some of the prosecution witnesses, and he had two brothers who were police officers. *Id.; see also State v. St. John,* 186 S.W.3d 847, 856 (Mo.App. W.D.2006) (distinguishing *State v. Gary* ).

To find counsel's performance deficient for failing to strike a juror, the likelihood of the trial court granting the motion must be shown to a reasonable probability; counsel is not deficient for failing to do a futile act. *Edgar,* 145 S.W.3d at 461–62. Like the motion court, we are "not convinced that if a challenge for cause had been made that it would have been granted." Because Mr. Rice did not express a significant bias and was subsequently rehabilitated, we cannot conclude that counsel's failure to challenge Mr. Rice was incompetent or that it rendered the trial result unreliable.

## Conclusion

For the foregoing reasons, the judgment granting Mr. Pearson's post-conviction relief motion was in error. We reverse.

SMART and WELSH, JJ., concur.