Daniel COLLIS, Appellant,

v.

STATE of Missouri, Respondent.

No. SD 30551.

Missouri Court of Appeals,
Southern District,
Division Two.

March 16, 2011.

Maleaner Harvey, St. Louis, MO, for Appellant.

Chris Koster, Attorney General and Dora Fichter, Assistant Attorney General, Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

Daniel Collis ("Movant") appeals the motion court's denial of his amended Rule 29.15 [1] motion for post-conviction relief as-

---

1. All rule references are to Missouri Court Rules (2010), and all references to statutes are to RSMo 2000, unless otherwise specified.

serting his trial counsel, Jan King ("Mr. King"), was ineffective for failing to call Ronald Glaspie [2] ("Glaspie") to testify at his trial. We affirm the order of the motion court.

## Factual and Procedural History

Given the narrow scope of Movant's appeal, we set forth only those facts necessary to complete our review. Viewed in the light most favorable to the verdict, the following facts were adduced at trial. *State v. Smith*, 944 S.W.2d 901, 909 (Mo. banc 1997).

On March 16, 2000, Sarah Tibbetts ("Victim") was almost three years old. She resided in a duplex with her mother, Tommie Tibbetts ("Tommie"); [3] her 18-month-old sister; and Movant, Tommie's boyfriend. At approximately 7:30 p.m., an ambulance arrived at the residence in response to a 911 call requesting assistance for a child who was "possibly unconscious, probably not breathing." Victim was taken by ambulance to the hospital. Despite further efforts to revive Victim at the hospital, she was pronounced dead.

An autopsy revealed Victim had been severely beaten. She sustained blunt abdominal trauma, most likely the result of being struck multiple times in the abdomen by a hand or fist, which caused significant internal injuries and massive internal bleeding. The rapid blood loss caused Victim's death within one to two hours after infliction of her abdominal injuries. During that two-hour time frame, Movant, Tommie, and Victim's baby sister, were the only persons in the duplex with Victim. Movant was charged by information with committing abuse of a child in violation of

section 568.060, and second degree murder in violation of section 565.021.

At trial, the State contended Movant was the person who beat Victim to death. Movant asserted Tommie was responsible for Victim's death, as a part of his defense. A portion of the evidence at trial was relevant to that defense and is included here.

Tommie's sister-in-law, Shannon Tibbetts ("Shannon"), testified that when Tommie left the children with her in February of 2000, she noticed injuries to Victim consisting of a black eye, bruising from Victim's nose to behind her left ear, and bruises on Victim's legs and buttocks. When asked, Victim told Shannon she had fallen in the woods but then told Shannon, "Mommy did it."

Tommie's mother, Debra Hall ("Hall"), also noticed signs of injury to Victim—she had bruises; could barely walk; would scream with pain if she bent over; was scared to take a bath or go to the bathroom; and her scalp was "messed up." When Hall asked Victim about the injuries, Victim said she had fallen in the woods. Hall, knowing Victim probably did not get these injuries from falling in the woods, asked Victim who injured her. Victim replied, "Mommy did it." Skeptical of this answer Hall then asked Victim, "Mommy did this to you?" to which Victim replied, "[Movant] did it."

Jennifer Welch, a nurse in the emergency department, testified that after Victim was pronounced dead at the hospital, Tommie's sister accused Tommie of being responsible for Victim's death. In response, Tommie yelled at her sister, "Don't tell me you don't beat your kids."

---

**2.** Ronald Glaspie is Movant's first cousin.

**3.** · Because two of the witnesses share the same surname, we use their first names for

purposes of clarity. No disrespect or familiarity is intended.

Movant's sister testified that before Tommie dated Movant, she was Tommie's co-worker and close friend and observed bruises on Victim.

Movant also testified at trial that Tommie abused Victim.

During the State's case, Exhibit 22, a packet of letters Movant wrote to Tommie while in jail awaiting trial, was admitted in evidence without objection. The third letter from Movant to Tommie read in part:

> Go ahead and tell the truth, that I did the hitting of [Victim] in February and I'll tell them why I blacked your eye over how I treated [Victim] in February for that week. Okay? And please don't use this letter unless you have to, only if we get separate trials.

Another letter read:

> And I've never once said you beat your kids, because I know you have never. Not once the whole time I have been with you.
>
> Just say you read the autopsy response and got to thinking that I did do it and—and just you didn't believe I did, but now that you read it, you know I had to have when you left to go to Casey's to call your fucking mom and aunt, which you lied to me.
>
> So do as I say, because if we get separate trials, convince your jury I did it and I'll do the same at mine so we can both get off. Please do this for me. Okay? It's the only way. Memorize what I've said in this letter. All right?

On March 19, 2003, a jury convicted Movant of abuse of a child and second degree murder. Movant was sentenced to twelve years' imprisonment on the child abuse conviction and life imprisonment on the murder conviction. This Court affirmed the order of the trial court. *State v. Collis*, 139 S.W.3d 638 (Mo.App. S.D. 2004).

On November 4, 2004, Movant timely filed a *pro se* motion for post-conviction relief. On February 7, 2005, Movant's attorney filed an amended motion for post-conviction relief alleging Movant was denied effective assistance of counsel because: (1) Movant told Mr. King that Glaspie dated Tommie and Glaspie had witnessed Tommie abuse Victim; (2) Glaspie would have been available and willing to testify he saw Tommie being physically abusive toward Victim; (3) Mr. King never contacted Glaspie; and (4) Glaspie's testimony would have established a viable defense.

On March 15, 2010, the motion court held an evidentiary hearing. Movant testified he informed Mr. King he wanted him to interview, investigate, and subpoena Glaspie to testify he had witnessed Tommie slapping her children and basically "being a bad parent." On cross-examination, Movant admitted he did not give Mr. King Glaspie's address. He said he provided his mother's address and phone number and told Mr. King to contact his mother to find out how to locate Glaspie.

Glaspie testified he had known Tommie "[n]ot very long at all" in 2003. Glaspie testified before Movant and Tommie were dating, he observed Tommie belligerently screaming at her children and having hold of the "kid's arm, by a little harder than I think, you know, to get your point across to a child...." Glaspie explained he did not know the names of the children and he did not live with Tommie. He said he was never contacted by Mr. King, but that he would have been willing to provide the trial court with testimony in 2003. He testified he had multiple felony convictions.

Mr. King testified at the hearing he had "no independent recollection" Movant informed him he wanted Glaspie to testify. He also testified he did not find anything

to help his recollection after reviewing his trial file and computer, where it was his usual practice to put notes about potential witnesses and other legal matters he and his defendants discussed. Mr. King testified he had a conversation with Movant's mother, but there was no indication in his file that Movant's mother gave him any addresses or information about any potential witnesses.

Mr. King further testified there was "significant" evidence admitted at trial that Tommie was abusive towards her children, including evidence Victim did not want to go with Tommie; Victim said her mother caused her injuries; and when confronted by her sister at the hospital, Tommie yelled, "Don't tell me you don't beat your kids, too." He explained he would have investigated Glaspie if he had been given the information that Glaspie could have testified to past instances where Tommie physically abused Victim. Mr. King noted testimony that Tommie yelled at her child and grabbed her arm for no reason would have been helpful to Movant's case but "wouldn't have negated anything."

On April 2, 2010, the motion court issued findings of fact and conclusions of law, denying Movant's post-conviction motion. The motion court specifically found there was insufficient evidence Mr. King knew of the existence of Glaspie, and insufficient evidence Glaspie would have provided Movant a viable defense. This appeal followed.

### Standard of Review

■ We review a post-conviction relief motion for whether the motion court's findings of fact and conclusions of law are clearly erroneous. *Forrest v. State*, 290 S.W.3d 704, 708 (Mo. banc 2009) (citing Rule 29.15(k)). Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made. *Id.* A post-conviction relief ruling is presumed correct, and the movant has the burden of proving his grounds for relief by a preponderance of the evidence. *Id.*; Rule 29.15(i). "At a post-conviction relief evidentiary hearing, the motion court determines the credibility of the witnesses and is free to believe or disbelieve the testimony of any witness, including that of the Movant." *Hurst v. State*, 301 S.W.3d 112, 117 (Mo.App. E.D. 2010).

### Issue on Appeal

Movant contends the motion court erred in denying his amended Rule 29.15 motion because Movant proved by a preponderance of evidence that Mr. King was ineffective for failing to interview, investigate, and subpoena Glaspie. Movant alleges Glaspie would have provided Movant a viable defense by testifying to the fact he previously witnessed Tommie act abusively towards Victim. The State denies Movant's contentions. The issue for our determination is whether the motion court was clearly erroneous in concluding Movant did not overcome the presumption that Mr. King rendered adequate assistance and made all significant decisions in the exercise of professional judgment.

### Analysis

■ To prove ineffective assistance of counsel, movant must demonstrate: (1) his counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances; and (2) his defense was prejudiced as a result of that deficiency. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Storey*, 901 S.W.2d 886, 893 (Mo. banc 1995). "To prove prejudice, movant must show a 'reasonable probability that,

but for counsel's errors, the result of the proceeding would have been different.'" *State v. Shurn,* 866 S.W.2d 447, 468 (Mo. banc 1993) (quoting *State v. Ervin,* 835 S.W.2d 905, 929 (Mo. banc 1992)). "It is presumed that counsel is effective and that the burden is on the movant to show otherwise." *Forrest,* 290 S.W.3d at 708. "Trial strategy is not a basis for ineffective assistance of counsel." *Id.*

■ To show ineffective assistance for failure to call a witness, Movant must show: "(1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense." *Hutchison v. State,* 150 S.W.3d 292, 304 (Mo. banc 2004). "'If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance.'" *Worthington v. State,* 166 S.W.3d 566, 577 (Mo. banc 2005) (quoting *State v. Jones,* 885 S.W.2d 57, 58 (Mo. App. W.D.1994)).

■ First, the motion court found there was insufficient evidence Mr. King knew of Glaspie. We cannot say this finding is clearly erroneous. Movant admitted he did not give Glaspie's address to Mr. King. Mr. King testified he did not recall being informed of Glaspie and he would have investigated Glaspie if he was provided with the information as alleged by Movant. The motion court credited Mr. King's testimony and found he was unaware of Glaspie. We must defer to the motion court's determination of witness credibility, which was free to believe or disbelieve the testimony of any witness. *See Hurst,* 301 S.W.3d at 117. In light of the motion court's finding of credibility, Movant has not shown Mr. King knew about the existence of Glaspie. *See Edwards v. State,* 200 S.W.3d 500, 518 (Mo. banc 2006).

■ Movant's argument also fails because he did not demonstrate the motion court's finding that Glaspie's testimony would not have produced a viable defense was clearly erroneous. "When the testimony of the witness would only impeach the state's witnesses, relief on a claim of ineffective assistance of counsel is not warranted." *Whited v. State,* 196 S.W.3d 79, 82 (Mo.App. E.D.2006). However, when witness testimony would also negate an element of the crime for which a movant was convicted, the testimony provides the movant with a viable defense. *Id.* Here, Glaspie's testimony does not negate an element of the crime. Although Glaspie's testimony, if found credible, may have been relevant to cast some doubt on the State's witnesses, it would not produce a viable defense. At best, Glaspie's testimony was cumulative evidence of Tommie's history of abusing Victim prior to her death. Furthermore, Glaspie's statements did not concern the fatal injuries Victim received on the day she died; it was limited to an event he witnessed at some point before the murder and before Movant was involved with Tommie. Finally, his testimony only revealed he had seen Tommie scream at the children and hold a "kid's" arm too tightly.

Notably, the jury heard substantial evidence at trial that Tommie was abusive to her children. Shannon testified in February of 2000, that Tommie left the children with her, and she noticed injuries to Victim. When asked, Victim initially told Shannon she had fallen in the woods but then told her, "Mommy did it." Victim made similar statements to Tommie's mother, Debra Hall. Hall also noticed Victim had serious injuries. Hall asked Victim about the injuries and Victim initially said she had fallen in the woods. Skeptical of this answer, Hall then asked Victim who injured her and she replied, "Mommy did it." Only after Hall asked, "Mommy

did this to you?" did Victim accuse Movant. Additionally, after Victim was pronounced dead at the hospital, Tommie's sister came to the hospital and accused Tommie of being responsible for Victim's death. In response, Tommie yelled at her sister, "Don't tell me you don't beat your kids." Movant's sister testified at trial she was Tommie's co-worker and close friend before Tommie dated Movant and she had seen bruises on Victim. Movant also testified at trial that Tommie abused Victim.[4]

Because the testimony of Glaspie would have been cumulative evidence, and would not have negated an element of Movant's crime, Glaspie's testimony would not have provided Movant with a viable defense. Thus, Mr. King was not ineffective in failing to call Glaspie as a witness. *See Kuhlenberg v. State*, 54 S.W.3d 705, 709 (Mo. App. E.D.2001).

After review of the entire record, this Court is not left with a definite and firm impression a mistake has been made regarding the motion court's finding that Movant did not overcome the presumption that Mr. King rendered adequate assistance and made all significant decisions in the exercise of professional judgment. Having found no error in the motion court's finding that Movant failed to sustain his burden of proving deficient performance by counsel, we need not address Movant's argument related to the prejudice prong of the *Strickland* test. *See Dorsey v. State*, 113 S.W.3d 311, 314 (Mo. App. S.D.2003). Point denied. The motion court's decision is affirmed.

SCOTT, C.J., and BATES, J., Concur.

---

4. Ironically, Movant's letters to Tommie confessed he was abusive to Victim in February and he knew Tommie never beat her children. The letters also revealed Movant's plan for him and Tommie to escape conviction by convincing the jury the other one did it.