**Daniel Boone WADLOW,
Movant–Appellant,**

v.

**STATE of Missouri, Respondent–
Respondent.**

**No. SD 34452**

Missouri Court of Appeals,
Southern District,
Division One.

Filed: May 9, 2017

ATTORNEY FOR APPELLANT—EMMETT D. QUEENER, Columbia, MO

ATTORNEY FOR RESPONDENT—KAREN L. KRAMER, Jefferson City, MO

DON E. BURRELL, J.

In 2011, a jury found Daniel Boone Wadlow ("Movant") guilty of statutory sodomy in the first degree, and the trial court imposed a life-sentence. *See* section 566.062.[1] We affirmed Defendant's judgment of conviction and sentence on direct appeal in *State v. Wadlow*, 370 S.W.3d 315, 323 (Mo. App. S.D. 2012).

Movant now appeals the subsequent denial, after an evidentiary hearing, of his amended Rule 29.15 post-conviction motion to vacate his conviction and sentence ("the amended motion")—a decision we review to determine whether the findings of fact and conclusions of law supporting the decision are clearly erroneous. Rule 29.15(k); *Moore v. State*, 328 S.W.3d 700, 702 (Mo. banc 2010).

Movant's two points claim, respectively, that the motion court clearly erred because Movant proved his lawyer ("trial counsel") was ineffective in: (1) failing "to move to strike venireperson [number 7 ("Juror 3")]" after Juror 3 disclosed "that she could not be fair due to having a young granddaughter herself"; and (2) failing to object to questions the State asked a trial witness about "violence toward [Movant's] son, and statements [the witness] allegedly made to police about abuse between [Movant] and [his ex-wife.]"

---

1. All statutory references are to RSMo 2000. All rule references are to Missouri Court Rules (2016).

Finding merit in Movant's first point, we must reverse the motion court's denial of post-conviction relief and vacate Movant's underlying judgment of conviction and sentence.[2]

### Relevant Facts

During *voir dire*, the prosecutor informed the venire panel that "[t]he victim in this case—was at the time, back in February of 2009, a five year old girl[.]" He then engaged in the following exchange:

> Q. Let me ask, due to the nature of this case is there anyone who feels that they would not be able to be fair and impartial simply due to the nature of the charges of this case? Please raise your hand.
>
> . . . .
>
> Q. Thank you. Can you raise your hands again if there was anybody that felt they might not be able to be fair or impartial in this case? [Juror 3]?
>
> [Juror 3]: Yes. I have a granddaughter that's four years old and I just truly don't think that I could do it, to be honest, to be fair about it.

Q. Would you be able to listen to the evidence and make a decision just based on that evidence?

[Juror 3]: No.

Q. Thank you. [The prosecutor then questioned other members of the panel.[3] ]

During his portion of *voir dire*, trial counsel named various venirepersons, including Juror 3, who had responded to questions asked by the prosecutor. Trial counsel did not ask Juror 3 any questions. Trial counsel also asked the panel if anyone "would find it difficult to find in favor of an older person as opposed to a young child if the evidence so dictated" or "find it impossible to adhere to the law as the Judge reads it to you and meet the standard of beyond a reasonable doubt before you would return a verdict of guilty?" The record does not indicate that Juror 3 responded to either of these questions. Trial counsel did not ask the trial court to strike Juror 3 for cause, and he did not use one of his peremptory strikes to exclude her from the jury.[4]

The amended motion asserted, *inter alia*, that trial counsel's failure to challenge Juror 3 for cause denied Movant his right to effective assistance of counsel.[5] At

---

**2.** Because Movant's first point requires the vacation of Movant's underlying conviction and sentence, we do not reach his thus-mooted second point.

**3.** The parties identify no other time during *voir dire* in which Juror 3 spoke individually.

**4.** The direct appeal record has been transferred to this appeal. Movant's points on direct appeal did not raise any issue related to Juror 3's service on the jury. A different judge than the one who presided over Movant's trial conducted the evidentiary hearing on the amended motion.

**5.** Movant's *pro se* motion for post-conviction relief did not include trial counsel's failure to challenge Juror 3 as a basis for relief, and the amended motion was not timely filed. The

mandate in Movant's direct appeal was entered on July 27, 2012. Movant filed his *pro se* motion on August 31, 2012. Post-conviction counsel was appointed on September 10, 2012, and the motion court granted a 30–day extension of time to file the amended motion. The amended motion was not filed until April 22, 2013, well after the deadline for filing it had passed. *See* Rule 29.15(g). Post-conviction counsel filed a motion asking the motion court to treat the amended motion as having been timely filed. After considering evidence presented at a hearing, the motion court found that no negligence or intentional misconduct by Movant contributed to the late filing and that post-conviction counsel had abandoned Movant. As a result, the motion court correctly allowed the amended motion to be filed out of time. *See State v. Ervin*, 835 S.W.2d 905, 928 (Mo. banc 1992). A different

the evidentiary hearing on the amended motion, post-conviction counsel asked trial counsel whether there was "any strategy that you recall in not striking [Juror 3]?" Trial counsel replied, "No I can't recall that at this time." Trial counsel testified that there "certainly could be" reasons to consider Juror 3 "a good potential juror for the defense[,]" but he did not identify any such reasons. Trial counsel recalled that Movant was with him "during the entire voir dire process[,]" and trial counsel did not recall Movant "expressing an objection to [him] regarding [Juror 3.]"

Movant also testified at the evidentiary hearing. He recalled that he "once ... asked [trial counsel] why he didn't object on [Juror 3] .... and [trial counsel] just acted like he didn't hear me."

The motion court found Movant had "admitted during the Rule 29.15 evidentiary hearing that he was aware of [Juror 3] being on the jury despite her statements and was further aware that no objection was raised." Based upon this finding, the motion court denied Movant's claim that trial counsel was ineffective in failing to challenge Juror 3.[6] This appeal timely followed.

### Analysis

■ In support of Point 1, Movant argues that "[r]easonably competent counsel would have moved to strike [Juror 3], and the trial court would have been required to strike her." Movant maintains he was prejudiced by trial counsel's failure because Juror 3 "admitted that because of her granddaughter, she could not be fair. This case involved a preschool child—the very issue upon which [Juror 3] was biased."

The State responds that Movant failed to show that trial "counsel did not have a strategic reason for not striking [Juror 3] for cause[,]" and in considering "the totality of [Juror 3's] responses[,]" her impartiality was assured by her silence in response to questions asking if anyone would have difficulty in favoring an older person over a younger person or would find adhering to the law impossible.

■ It is certainly true that silence in response to pertinent follow-up questioning may unequivocally indicate that a juror who at first seemed biased was actually qualified to serve as a fair and impartial juror. *See Edgar v. State*, 145 S.W.3d 458, 463 (Mo. App. W.D. 2004). But we must evaluate the State's argument in the context of the fundamental principle "that a criminal defendant is entitled to a jury composed of only those who are free from any bias or prejudice. The failure to challenge for cause a venireperson who admits to a prejudice against the defendant is ineffectiveness absent an acceptable explanation." *State v. McKee*, 826 S.W.2d 26, 28–29 (Mo. App. W.D. 1992).

■ "To prevail on a claim of ineffective assistance of counsel during the jury selection process, the defendant must show that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that he was prejudiced thereby." *Pierce*, 927 S.W.2d at 377. The failure to provide a criminal defendant with a jury of 12 per-

---

lawyer than the one who filed the amended motion now represents Movant in this appeal.

6. The State agrees that Movant "is not foreclosed from raising his claim in his postconviction motion." *Cf. State v. Pierce*, 927 S.W.2d 374, 377 (Mo. App. W.D. 1996) (an improper jury selection claim was not cognizable because the movant was aware of the issue before the direct appeal, but an ineffective assistance of counsel claim based upon failing to challenge the jury's selection was reviewed).

sons "totally free from any partiality" is a denial of the right to a trial by jury and satisfies the prejudice-prong of the *Strickland* test. *McKee*, 826 S.W.2d at 28. Therefore, "[w]hen it is shown that a venireman lacks impartiality, a challenge for cause must be sustained." *Presley v. State*, 750 S.W.2d 602, 606 (Mo. App. S.D. 1988) (en banc).

■ "[W]here a venireperson has admitted significant bias and has not been rehabilitated, counsel's failure to challenge the biased juror overcomes the presumption of effectiveness because of the magnitude of the threat to the defendant's right to a fair trial." *Pearson v. State*, 280 S.W.3d 640, 645 (Mo. App. W.D. 2009). But an acceptable explanation for failing to challenge an apparently biased juror may constitute a reasonable trial strategy such that counsel was not ineffective. *See State v. Eastburn*, 950 S.W.2d 595, 607–08 (Mo. App. S.D. 1997) (the defense attorney was unable to recall whether there was a strategic reason for not challenging a juror for cause and the appellate court could not "brand the motion court's findings clearly erroneous" where the juror also made other comments during voir dire suggesting that she had emotions similar to those attributed to the defendant). However, *James v. State*, 222 S.W.3d 302, 307 (Mo. App. W.D. 2007), illustrates that trial counsel's lack of memory does not necessarily constitute an acceptable explanation for not challenging an apparently biased juror.

[T]he motion court did not specifically identify any plausible strategic reason for counsel's failure to challenge [the biased juror]; it merely noted that counsel had been present during voir dire and opined that counsel may have observed something about [the biased juror] during that period. At the motion hearing, counsel was unable to identify any strategic reason for allowing [the biased juror] to remain on the venirepanel, even after reviewing his notes from jury selection, and no strategic reason for allowing [the biased juror] to remain on the jury is apparent from the record. Counsel's inability to remember the reasons for deciding not to strike the juror at issue does not support a finding that counsel's decision was a matter of trial strategy and, in fact, undermines such a conclusion.

*Id.*

■ For purposes of assessing prejudice, we have recognized that " '[i]n certain Sixth Amendment contexts, prejudice is presumed.' " *Presley*, 750 S.W.2d at 607 (quoting *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We applied the presumption in *Presley* when trial counsel failed to address "one juror who was, by his own admission, biased[,]" heeding *Strickland*'s admonition that " 'prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost.' " *Id.* (quoting 466 U.S. at 692, 104 S.Ct. 2052). Likewise, in *McKee*, "the fact that two venireperson[s] voiced a prejudice and later served on the jury can only mean that McKee was tried in violation of his constitutional right to an impartial jury and that prejudice is so likely that prejudice may be presumed." *McKee*, 826 S.W.2d at 29.

Here, Juror 3 stated that she "truly" did not think she could be fair and impartial, and she plainly stated that she would not "be able to listen to the evidence and make a decision just based on that evidence[.]" After admitting her bias, Juror 3 remained silent when the panel was asked whether anyone "would find it difficult to find in favor of an older person as opposed to a young child if the evidence so dictated[,]" an abstract question that included a predetermined conclusion about the evidence.

Even if we assumed, *arguendo*, that Juror 3's silence was an unequivocal assurance that she would not find it hard to find in favor of Movant because he was older than his child victim, such an assurance would fail to cure the form of Juror 3's expressed bias. Her bias did not rest on the age difference between Movant and the victim—it was based instead on her granddaughter's age-based similarity to the victim.

Juror 3's silence in response to trial counsel's question to the panel as to whether anyone would "find it impossible to adhere to the law as the Judge reads it to you and meet the standard of beyond a reasonable doubt before you would return a verdict of guilty" can rightly be interpreted as an unequivocal assurance that Juror 3 could follow the law, including its requirement that she find Movant guilty beyond a reasonable doubt. But that assurance was also insufficient to cure Juror 3's bias that she would have a significant difficulty in fairly deciding the *factual* disputes in the case, a different concern than a difficulty in applying the law to the evidence. Juror 3 informed the parties that she believed she would be unable to listen to the evidence and fairly and impartially evaluate it. As a result, Juror 3's silence in response to the questions identified by the State did nothing to either remove or attenuate the nature of the bias she had freely admitted.

Trial counsel's speculation during the evidentiary hearing that there "certainly could be" reasons why Juror 3 would have made "a good potential juror for the defense" (without suggesting any specific reason why she might be favorably disposed toward Movant) fares no better than counsel's absence of a plausible strategic reason in *James*. *See* 222 S.W.3d at 307. Without a reasonable counterweight to Juror 3's admitted inability to evaluate the evidence fairly and impartially, trial counsel's inability to recall "any strategy" for failing to seek the removal of Juror 3 does not constitute an acceptable explanation. *See id.* Under these circumstances, we presume that trial counsel's failure to challenge the empanelment of Juror 3 was prejudicial to Movant. *See McKee*, 826 S.W.2d at 29; *Presley*, 750 S.W.2d at 607; *see also Pearson*, 280 S.W.3d at 645 (when counsel "fails to articulate a reasonable strategy for having [an] admittedly biased juror on the panel, counsel has failed to exercise the customary skill and diligence of a reasonably competent attorney").

Point 1 is granted, and the motion court's denial of post-conviction relief is reversed. The matter is remanded to the sentencing court, which is directed to vacate the judgment of conviction and sentence in case no. 09IR–CR00076–01, as authorized by Rule 29.15(j), and grant Movant's Motion for New Trial.

JEFFREY W. BATES, P.J.— CONCURS

MARY W. SHEFFIELD, C.J.— CONCURS