James Clinton KLARR,
Movant-Appellant,

v.

STATE of Missouri, Respondent-
Respondent.

No. SD 34653

Missouri Court of Appeals,
Southern District,
Division One.

Filed: Oct. 17, 2017

SAMUEL E. BUFFALOE, Columbia, Mo, for Appellant.

GARRICK F. D. APLIN, Jefferson City, Mo, for Respondent.

DON E. BURRELL, J.

James Clinton Klarr ("Movant") appeals the denial of his amended Rule 29.15 post-conviction relief motion after an evidentiary hearing.[1] Movant's underlying convictions were for statutory rape in the second degree, statutory sodomy in the second degree, and child molestation in the second degree. *See* sections 566.034, 566.064, and 566.068.[2] In two points relied on, Movant

---

1. All rule references are to Missouri Court Rules (2017), and all statutory references are to RSMo 2000.

2. Based upon our review of the legal file, we have independently verified that the amended motion was timely filed. *See Moore v. State*, 458 S.W.3d 822, 826 (Mo. banc 2015) (Fisch-

contends the motion court clearly erred in denying Movant's claims that his trial counsel was ineffective for failing to: (1) strike a particular juror for cause based upon *voir dire* answers suggesting that the juror "would hold it against [Movant] if he did not testify or present a defense"; and (2) "suppress State's Exhibit 1" ("Exhibit 1")—a letter that fell from Movant's pocket while he was under arrest.

Finding no ineffective assistance of counsel in jury selection, and no prejudice in the admission of Exhibit 1, we affirm.

### Applicable Principles of Review and Governing Law

■ A successful ineffective-assistance-of-counsel claim requires a movant to "show (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was thereby prejudiced." *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Our review of a defense attorney's performance is "highly deferential[,]" *Strickland* 466 U.S. at 689, 104 S.Ct. 2052, and "[a reviewing] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* To demonstrate prejudice, a movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Nunley*, 923 S.W.2d 911, 922 (Mo. banc 1996) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052).

■ "It is fundamental that a criminal defendant is entitled to a jury composed of only those who are free from any bias or prejudice." *State v. McKee*, 826 S.W.2d 26, 28 (Mo. App. W.D. 1992). In addition, a defendant in a criminal case must be afforded a full panel of qualified jurors before any peremptory challenges are exercised. *James v. State*, 222 S.W.3d 302, 305-06 (Mo. App. W.D. 2007). "A possibility of prejudice is not sufficient to disqualify a juror: 'It must clearly appear from the evidence that the challenged venireperson was in fact prejudiced.'" *Pearson v. State*, 280 S.W.3d 640, 646 (Mo. App. W.D. 2009) (quoting *State v. Walton*, 796 S.W.2d 374, 377 (Mo. banc 1990)). "Whether a prospective juror is qualified is to be determined from the context of the entire voir dire examination, not from a single response." *Pearson*, 280 S.W.3d at 646. If trial counsel "fails to articulate a reasonable strategy for having [an] admittedly biased juror on the panel, counsel has failed to exercise the customary skill and diligence of a reasonably competent attorney." *Id.* at 645. As to prejudice, when a biased juror serves on the jury, and there was no reasonable strategy to leave the juror on the jury, prejudice may be presumed for purposes of ineffective assistance of counsel. *Wadlow v. State*, 518 S.W.3d 872, 877 (Mo. App. S.D. 2017).

■ We review the denial of a Rule 29.15 motion to determine "whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Collis v. State*, 334 S.W.3d 459, 463 (Mo. App. S.D. 2011); *see also* Rule 29.15(k). We pre-

er, J., concurring). The mandate in Movant's direct appeal of his criminal convictions was entered on July 28, 2015. Movant's *pro se* motion was timely filed and counsel was appointed on September 28, 2015. *See* Rule 29.15(b). On October 19, 2015, counsel's request for an extension of time to file the amended motion was granted, and the amended motion was timely filed on December 28, 2015, as December 27, 2015 was a Sunday. *See* rules 29.15(g) and 44.01(a).

sume that the findings and conclusions of the motion court are correct, and "[t]he movant bears the burden of demonstrating clear error." *Wallar v. State*, 403 S.W.3d 698, 705 (Mo. App. W.D. 2013).

### Analysis

Because the two points raised in Movant's timely appeal address distinct portions of the trial, we will discuss the facts and procedural history relevant to each point within our analysis of that particular point, and we take them up in reverse order.

### Point 2—No Motion to Suppress Exhibit 1

 We borrow without further attribution from the statement supporting our summary order affirming the judgment in Movant's direct appeal in summarizing the events relevant to Movant's claims.

In August 2012, Movant moved in with his nephew, nephew's girlfriend ("Mother"), and Mother's children, including a child who was 15 and 16 years old ("Child") during the time period relevant to this case. Mother began noticing interactions between Movant and Child that "seem[ed] off[,]" and Mother thought that it was inappropriate for a "[sixty]-something-year-old man" to be spending so much time with Child. Mother responded to her concerns by trying to restrict any one-on-one contact between Movant and Child.

During Movant's criminal trial, Child testified as follows about her relationship with Movant. Around Christmas of 2012, Child performed oral sex on Movant, and on another occasion, he performed oral sex on her. On Christmas day, they unsuccessfully attempted to have intercourse. On January 29, 2013, they succeeded, and they also engaged in oral sex. They had oral sex on two more occasions, the last occurring on Valentine's Day, 2013. Movant spoke with Child about their having a "biblical marriage[,]" and Child understood that to mean that "God allowed [them] to get married[.]" Child believed that she was "biblically married to [Movant,]" and she eventually told an acquaintance about their marriage.

Mother's trial testimony was that when the acquaintance told Mother that Child "had said they [ (Movant and Child) ] were biblically married[,]" Mother assumed that they had been sexually active, and she called "the hotline." Child initially told investigators that she had been joking when she claimed to be biblically married to Movant.

The chief deputy for the Wright County Sheriff's Department, Bobby Willhite ("Officer Willhite"), testified in a pre-trial deposition taken by trial counsel. The deposition was received into evidence during the evidentiary hearing on Movant's post-conviction motion ("the motion hearing"). In his deposition, Officer Willhite recalled that when he first investigated the matter, "there was [sic] allegations that there had been some thoughts of sexual activity between [Movant] and [Child]," and several members of the family, including Child, were interviewed. After those interviews had been completed, Officer Willhite placed Movant under arrest. Officer Willhite was planning on applying for a warrant to search Movant's home, and Officer Willhite was "holding [Movant] pending a search warrant[.]" When Officer Willhite learned that he "didn't have enough to get a search warrant[,]" he released Movant.

During Movant's trial, Officer Willhite testified again about Movant's arrest. Officer Willhite took Movant into custody "for holding because [Officer Willhite] was in the investigation." While Movant "was changing out [at the sheriff's office], a

letter fell out of [Movant's] pants pocket[.]" Officer Willhite took the letter, and it was received into evidence at Movant's trial as Exhibit 1 over trial counsel's objection that no foundation had been laid that Child was its author.[3]

Child testified at trial that she wrote Exhibit 1 to Movant; it was addressed " 'Hey, Darling' "; the second page was Child "responding back to one of [Movant's] notes"; and the last page included her question to Movant, " 'What do you mean, if I deny you, you will deny me? Sorry for the bad spelling.' " Child explained that Movant "had written [her] a letter before, and it had said, 'I deny you. Will you deny me?' " but [Child] didn't understand what it meant when [she] had given it back, so [she] had written that one to give to him to ask him the question."

Mother sent Child to stay with the family's pastor. Child then disclosed to her pastor that she and Movant had a sexual relationship, and the pastor reported this information to the authorities. When Officer Willhite spoke with Child after her disclosure to the pastor, Child "provided copies of letters that [Movant] had written to her[,]" and these letters were admitted at trial as State's Exhibit 3 ("Exhibit 3"). At trial, Child read the following part of Exhibit 3 that she identified as Movant's answer to her question about Movant denying Child:

> "Oh, the deny me, I will deny you is [sic] if there is an official investigation of [sic] any state government agency or if it comes up when you file for freedom in court. Okay. Never deny you in my heart. Us—all is for us. We never, ever deny our friendship. Trust, hope, faith, and love. Happy Valentine's Day."[4]

Trial counsel testified at the motion hearing that he understood that when someone was "arrested and booked into jail" it was "normally the case that the property on [the individual's] person [was] inventoried and kept in their property[.]" Trial counsel also understood "that inventory searches of property were not violative of a person's Fourth Amendment rights as long as they were done to [sic] an established policy[.]" Trial counsel believed that the Wright County Sheriff's department had such a policy.

When asked whether a court would have found that Officer Willhite "did not have probable cause" to arrest Movant after the first interview of Child, trial counsel replied that he "did not believe it would be successful to . . . try to suppress that." Trial counsel also testified that he did not have "a strategic reason" for not filing a motion to suppress, and he did not "recall

---

3. Movant's objection to the admission of Exhibit 1 was not preserved for review in Movant's direct appeal because his motion for new trial did not include that complaint. Movant cites Exhibit 1 in his brief, and he purports to quote portions of it, but Exhibit 1 is not a part of the record on appeal in this case. While Exhibit 1 appears to have been deposited with this court as a part of the record in Movant's direct appeal, and the record from the direct appeal—consisting of the transcript and legal file—was transferred to this appeal in October 2016, a docket entry in the direct appeal indicates that all deposited exhibits were returned to the parties in July 2015. The exhibits that have been deposited in this appeal are those identified as having been admitted in the motion hearing and consist of "State's Exhibit 3[,] Affidavit for Search Warrant[,]" and "Movant's Exhibit 2, [Officer] Willhite Deposition." The transcript of the motion hearing indicates that "Movant's Exhibit 1" was admitted into evidence and was "one of the notes" between Movant and Child. Trial counsel did not dispute that it was the same document as Exhibit 1, but Exhibit 1 has not been deposited with this court.

4. Due to our return of the parties' trial exhibits, State's Exhibit 3 is also not on deposit with this court.

if [he] didn't see it [ (a basis to suppress on a potentially unlawful arrest) ] or it was an error to not do it."

The motion court described Exhibit 1 in its "**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT**" ("the findings") as "a rather incriminating note/letter found upon [Movant's] person during an inventory search pursuant to his initial arrest." [5] The findings also included that "[t]here were statements in Exhibit [1] made by a child under the age of 15, to numerous people that she and the movant were in a '*Biblical marriage*', and even if the relationship did not involve sex, it involved something suspicious if they are saying that they are married in any sense other than the legal sense." The motion court found that "Exhibit 1 was the fruit of an inventory search and/or a search incident to arrest and therefore finds no error on behalf of counsel in not moving to suppress [it]."

Movant's second point asserts the motion court clearly erred in denying his

> claim that ... trial counsel was ineffective for failing to suppress [Exhibit 1], because this violated [Movant's] rights to due process of law and effective assistance of counsel ... in that [Exhibit 1] was only discovered as a result of an illegal arrest; Officer Willhite did not have probable cause to arrest [Movant] at the time that he did so.

Even if we assume that Movant intended to refer to trial counsel's failure to *move* to suppress Exhibit 1, as he did in the amended motion, the point is without merit. First, the argument supporting the point fails to develop any due-process argument and is therefore abandoned. *See Mallow v. State*, 439 S.W.3d 764, 771 n.4 (Mo. banc 2014) ("When an appellant fails to developed an argument in the argument

portion of the brief, that portion of the point relied on may be considered to be abandoned").

■ Second, to make a successful claim of ineffective assistance of counsel, Movant must demonstrate that prejudice resulted from trial counsel's allegedly deficient performance; *Sanders*, 738 S.W.2d at 857, and such prejudice must rise to a reasonable probability that—but for the challenged performance—the result of the proceeding would have been different. *Nunley*, 923 S.W.2d at 922. Indeed, "a court need not determine the first component regarding counsel's performance before examining for prejudice. If it is easier to do so, a claim may be disposed of for lack of sufficient prejudice." *Id.* at 923.

Movant argues that "Exhibit 1 was used to corroborate [Child's] testimony" and that the "evidence ... relied on the credibility of [Child]." Movant concludes that "[t]here is a reasonable probability that had counsel moved to exclude Exhibit 1 from evidence, the outcome of [Movant's] trial would have been different[,]" but he does not explain why that is so given the limited record before us. We do know from the record that Exhibit 3, identified as Movant's letter to Child, was received into evidence, and it included that Movant would "deny" Child " 'if there is an official investigation [by] any state government agency[.]' " As a result, the jury could evaluate Child's testimony in the context of this additional letter, and the jury could assess Movant's conduct, at least in part, based upon his statements in this additional letter. We also presume that the portions of both Exhibits 1 and 3 that cannot be discerned from the record would support the motion court's ruling because Movant has failed to include them. *See State v. Davis*, 242 S.W.3d 446, 449 n. 1

---

5. The same judge who presided over Movant's trial also presided over the motion hearing.

(Mo. App. S.D. 2007) (the "intendment and content" of an exhibit not filed with the appellate court "will be taken as favorable to the trial court's ruling and as unfavorable to the appellant"), and *Gage v. Morse*, 933 S.W.2d 410, 424 (Mo. App. S.D. 1996) (same).

Because Movant has failed to demonstrate that the result of the trial would have been different but for the admission of Exhibit 1, Point 2 is denied.

### Point 1—No Motion to Strike Juror No. 89

 Movant contends in Point 1 that "trial counsel was ineffective for failing to strike Juror No. 89 [ ("Juror 89") ] for cause" based upon indications "that he or she would hold it against [Movant] if he did not testify or present a defense[.]" [6] We deny the point because Movant has failed to demonstrate that Juror 89 was actually biased against Movant.

Movant highlights trial counsel's *voir dire* inquiry into whether anyone "would have to hear from the defense side, even if the State did not prove its case beyond a reasonable doubt." Trial counsel then worked his way through panelists' individual responses to those inquiries. Specifically, Movant quotes the following exchange:

[Trial counsel]: So you [ (Juror 28) ] would have to have him prove that he's not guilty?

[Juror 28]: Yes.

[Juror 89]: I would just have to hear both sides. Obviously, there's allegations; so I would have to hear why those allegations were made.

[Trial counsel]: So even if you were not convinced by the State's evidence, you would have to hear from the defense side in order to convict?

[Juror 89]: I would want to hear both sides of the story, yes.

[Trial counsel]: So you'd listen to all—whatever evidence he has and you're not firmly convinced, but you wouldn't vote not guilty.

[Juror 89]: There was a reason that there are allegations and I would expect to hear the other side of the story.

Trial counsel continued questioning the panel and eventually said:

And under our system of law in the United States, and I'm sure you've all seen this from TV, and it kind of goes with us having to not put on a defense if we don't want to, he's presumed innocent. Would anyone hold it against my client if he chose to not testify in this case?

Some panel members responded in the affirmative, but Juror 89 was not among them.

The prosecutor's portion of *voir dire* included the following. He stated that there had been "some questions about whether or not the defendant testifies." He then identified eight specific panel members by number as having indicated in various answers that they "would have some difficulty if [Movant] didn't testify." Given those answers, the prosecutor asked: "But would you automatically hold it against [Movant], each of you, especially the ones whose numbers I read—automatically hold it against him in any way because he does not testify? And we'll start with No. 69." He then addressed each of the eight specifically-identified panel members, and each one indicated that he or she would "automatically hold it against" Movant if he did not testify. Juror 89 did not

---

**6.** Point 1 makes the same vague references regarding due process as those contained in point 2. They fail for the same reasons articulated in our analysis of that point.

provide any responses to this line of questioning.

Trial counsel did not move to strike Juror 89 for cause, and he did not use a peremptory strike on Juror 89. Juror 89 was seated on the jury and participated in the verdict. Movant did not testify in his own defense, but he did present two witnesses.

At the motion hearing, trial counsel acknowledged that he was "familiar with [the] type of disqualifying basis for a juror" where a juror expresses bias against a defendant who "did not present his side of the story." Trial counsel testified that he did not have "any particular strategy reasons for not moving to strike Juror 89 for bias[.]"

The motion court's findings pointed out that Juror 89 "never affirmatively stated she would have to hear both sides *to acquit*. She also never said that she could not be fair and impartial if she didn't hear both sides." The motion court reasoned that Juror 89's position "that she would need to hear both sides of the story to 'convict', not to 'acquit'" was "harmful to the State's case, not [harmful to Movant]. On its face, this panel *member's statement* clearly would not have had any effect upon the jury's judgment as mandated by *Strickland*." The motion court also concluded that Juror 89 did not indicate prejudice when the State inquired if any venireperson would hold it against Movant if he did not testify. The motion court found that "the voir dire questioning might be considered vague and ambiguous," but Movant did not demonstrate that Juror 89 was "'*clearly biased*' as required by law[.]" As a result, the motion court concluded that trial counsel was not ineffective in failing to move that Juror 89 be stricken for cause.

Movant argues that while Juror 89 did say that "she would have to hear from the defense side in order to 'convict' instead of to 'acquit[,]'" she "seemed to agree with Juror [28's] comment" that Movant would have to prove that he was not guilty. Movant highlights the following statement made by Juror 89: "'There was a reason that there are allegations and I would expect to hear the other side of the story.'" Movant also argues that Juror 89's failure to respond to the State's questions about "'automatically hold[ing] it against [Movant] in any way because he does not testify'" did not serve to rehabilitate her because the prosecutor's question was addressed to eight other panel members, and Juror 89 had previously given "the clear impression that [she] would hold it against [Movant] if he did not testify." We disagree.

As the State points out, Movant's second premise is faulty because Juror 89 did not say that she agreed with Juror 28's opinions about requiring Movant to prove that he was not guilty. And Juror 89 did not state that she agreed with the other panel members who indicated that they would hold it against Movant if he did not testify. Juror 89 said that she "would *expect* to hear the other side of the story[,]" but she did not say that she would *have* to hear the other side of the story in order to *acquit* Movant (emphasis added).

Juror 89's answer to the question asked indicated that she would have to hear both sides in order to *convict* Movant—not to acquit him.[7] And when trial counsel in-

---

**7.** Although the motion court acknowledged in its findings that the *voir dire* question at issue may have been vague and ambiguous, the motion court, sitting as the trial court at the time of *voir dire*, was in the best position to interpret how the responding panelists interpreted the question based on intangibles that an appellate court cannot evaluate by reviewing a written transcript. *Cf. State v. McFadden*, 369 S.W.3d 727, 739 (Mo. banc 2012)

formed the jury that Movant was not required to put on a defense because he is presumed innocent and asked if anyone would "hold it against [Movant] if he chose to not testify in this case[,]" Juror 89 was not among those who said that they would. As a result, the motion court did not clearly err in finding that Movant failed to demonstrate that Juror 89 had an actual bias against him.

Point 1 is also denied, and the denial of post-conviction relief is affirmed.

MARY W. SHEFFIELD, P.J.—CONCURS

GARY W. LYNCH, J.—CONCURS

("The trial court was in the best position to determine [the venireperson's] qualification to

serve on the jury by observing his answers and demeanor").