

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| JAMES L. BROWN, | ) |
| | ) |
| Appellant, | ) |
| | ) WD77001 |
| v. | ) |
| | ) OPINION FILED: |
| | ) September 30, 2014 |
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Harrison County, Missouri**
**The Honorable Jack N. Peace, Judge**

**Before Division One:** Mark D. Pfeiffer, Presiding Judge, and
Lisa White Hardwick and Karen King Mitchell, Judges

James L. Brown appeals from the denial of his Rule 29.15 motion after an evidentiary hearing. In his sole point on appeal, Brown contends that the motion court clearly erred in denying his motion because he was denied effective assistance of counsel as a result of his trial counsel's failure to strike Venireperson #7 as a juror despite the venireperson's statement indicating that he believed Brown had done something to warrant being in court. We affirm.

### Factual and Procedural Background[1]

Following a jury trial, Brown was convicted of driving while intoxicated, in violation of section 577.010.[2] Brown was sentenced, as a chronic offender, to nine years' imprisonment.

---

[1] "On an appeal from the motion court's ruling on a Rule 29.15 motion, we view the facts in the light most favorable to the verdict." *Radmer v. State*, 362 S.W.3d 52, 53 n.1 (Mo. App. W.D. 2012).

The facts of the underlying criminal case were set forth by this court in its memorandum on direct appeal, as follows:

> At approximately 9:10 p.m. on February 21, 2009, Missouri Highway Patrol Trooper Benjamin Hilliard was driving north on Highway 69 north of Eagleville when he saw a vehicle driven by Jimmie Brown traveling south at a speed of 41 miles per hour in a 60 miles-per-hour zone, very close to the center line of the two-lane highway. His suspicion aroused, Hilliard turned around and began following Brown. Hilliard observed Brown not only drive close to the center line, but cross it on three occasions. After Brown crossed the centerline for a third time, Hilliard activated his emergency lights and pulled Brown over.
>
> Hilliard approached Brown's vehicle and asked for his driver's license. Brown responded that he had an identification card, but had difficulty removing the card from his wallet. While standing next to Brown, Hilliard noticed the smell of alcohol on Brown's breath, that Brown's speech was slurred, and that his eyes were bloodshot and glassy. Hilliard then took Brown's identification card from his wallet and asked him to sit in the trooper's car.
>
> Once in the police vehicle, Hilliard asked appellant whether he had been drinking. Brown responded by claiming that "it had been awhile since he had a drink." Hilliard then asked Brown to take a preliminary breathalyzer test, and Brown agreed, though he placed a penny in his mouth in an apparent attempt to sabotage the test.
>
> Hilliard also asked Brown to perform several field sobriety tests. Brown failed the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg-stand test. Brown could not recite the alphabet correctly, or speak generally without slurring. Furthermore, Trooper Hilliard saw empty beer cans in the back of Brown's car and several unopened beer cans in the front. Based on this accumulated evidence, Hilliard arrested Brown for driving while intoxicated and transported him to the Law Enforcement Center.
>
> At the Center, Brown initially consented to a breathalyzer test; however, when the penny fell out of his mouth as he was removing his dentures, Brown changed his mind and declined to submit to the test. Hilliard obtained a search warrant for Brown's blood. An analysis of the blood drawn from Brown revealed a blood alcohol content (BAC) of .201 percent, exceeding the presumptive level of intoxication of .08 percent.

*State v. Brown*, WD73734, memo op. at 1-3 (Mo. App. W.D. June 12, 2012).

---

[2] All statutory references are to the Revised Statutes of Missouri (2000), unless otherwise indicated.

On direct appeal, Brown argued that the results of his post-arrest testing of his blood should have been suppressed because the initial stop of his vehicle was unlawful. *State v. Brown*, 368 S.W.3d 318, 318 (Mo. App. W.D. 2012). This court affirmed Brown's conviction pursuant to Rule 30.25(b). *Id.*

On July 9, 2012, Brown timely filed a pro se motion for postconviction relief. On October 18, 2012, Brown filed an amended motion. In his amended motion, Brown alleged that his trial counsel was ineffective for failing either to request that Venireperson #7 be removed for cause or to use a peremptory strike to eliminate him from the panel. On July 19, 2013, the motion court held an evidentiary hearing on the motion. Brown's trial counsel testified at the hearing that she did not "recall any specific reasons" for not asking the court to strike Venireperson #7 for cause.

On September 19, 2013, the motion court issued its findings of fact, conclusions of law and judgment denying Brown's motion. Regarding trial counsel's failure to request that Venireperson #7 be struck, the motion court determined that Venireperson #7 did not "demonstrate[] any clear bias," and that Brown did not meet his burden in establishing that having Venireperson #7 serve on the jury affected the judgment. Brown appeals.

### Analysis

Brown's sole point on appeal is that the motion court clearly erred in denying his motion because he was denied effective assistance of counsel as a result of his trial counsel's failure to strike Venireperson #7 as a juror despite the venireperson's statement indicating that he believed Brown had done something to warrant being in court.

**Standard of Review**

"Review of a Rule 29.15 judgment is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Moore v. State*, 328 S.W.3d 700, 702 (Mo. banc 2010); Rule 29.15(k). Findings and conclusions are clearly erroneous if, after reviewing the entire record, we are left with a definite and firm impression that a mistake has been made. *Id.* "The motion court's findings are presumed correct." *Johnson v. State*, 406 S.W.3d 892, 898 (Mo. banc 2013). "[A] movant bears the burden of proving the asserted 'claims for relief by a preponderance of the evidence.'" *Id.* (quoting Rule 29.15(f)).

**The motion court did not clearly err in rejecting Brown's claim.**

"To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his . . . trial counsel failed to meet the *Strickland* test in order to prove his . . . claims." *Johnson*, 406 S.W.3d at 898 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). "Under *Strickland*, a movant must demonstrate that: (1) his . . . counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he . . . was prejudiced by that failure." *Id.* at 898-99. "Should a movant fail to satisfy either the performance prong or the prejudice prong of the test, the other prong need not be considered." *Johnson v. State*, 5 S.W.3d 588, 590 (Mo. App. W.D. 1999). "Prejudice occurs when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Johnson*, 406 S.W.3d at 899 (quoting *Deck v. State*, 68 S.W.3d 418, 429 (Mo. banc 2002)).

"A defendant is entitled to a fair and impartial jury." *Moore v. State*, 407 S.W.3d 172, 175 (Mo. App. E.D. 2013). "Each venireperson must be able to serve on the jury with an open mind, free from bias and prejudice." *Id.* If a venireperson demonstrates an inability to be fair

4

and impartial, then that venireperson must be stricken from the jury, "'unless, upon further questioning he or she is rehabilitated by giving unequivocal assurances of impartiality.'" *Id.* at 175-76 (quoting *James v. State*, 222 S.W.3d 302, 306 (Mo. App. W.D. 2007)). But the mere possibility of bias or prejudice, alone, is insufficient to disqualify a juror; instead, "'[i]t must clearly appear from the evidence that the challenged venireperson was in fact prejudiced.'" *Pearson v. State*, 280 S.W.3d 640, 646 (Mo. App. W.D. 2009) (quoting *State v. Walton*, 796 S.W.2d 374, 377 (Mo. banc 1990)).

"To succeed in his motion for post-conviction relief, [a] [m]ovant must prove actual bias on the part of the venireperson." *Moore*, 407 S.W.3d at 176. "Whether a prospective juror is qualified is to be determined from the context of the entire voir dire examination, not from a single response." *Pearson*, 280 S.W.3d at 646. "'The relevant inquiry is whether a prospective juror can follow the law.'" *Id.* (quoting *State v. Chaney*, 967 S.W.2d 47, 57 (Mo. banc 1998)). In other words, "'[t]he question is not whether a prospective juror holds opinions . . . , but whether these opinions will yield and the juror will determine the issues under the law.'" *State v. Brown*, 902 S.W.2d 278, 285 (Mo. banc 1995) (quoting *State v. Feltrop*, 803 S.W.2d 1, 8 (Mo. banc 1991), *overruled on other grounds by Joy v. Morrison*, 254 S.W.3d 885, 888-89 (Mo. banc 2008)). On the other hand, "[u]nqualified jurors are those whose views would substantially impair their ability to perform in accordance with the court's instructions and their oath." *Pearson*, 280 S.W.3d at 646.

Here, Brown has failed to demonstrate that Venireperson #7 exhibited actual bias or prejudice. He relies upon a single statement, made in response to an ambiguous question (as evidenced by other responses from the venire and counsel's attempts to rephrase), and he ignores

5

other indications in the record demonstrating that Venireperson #7 believed himself able to follow the law.

During voir dire, defense counsel spoke to the venire panel about the presumption of innocence:

> In America every defendant is presumed to be innocent, absolutely 100 percent presumption of innocence. We've heard the term. That's what it means. Right now if you voted, you'd have to vote not guilty. This presumption of innocence stays with the defendant until the State proves beyond a reasonable doubt that he is not innocent. Until they prove beyond a reasonable doubt that he's guilty, he is presumed innocent. Some of you are probably still thinking but we haven't heard any evidence. How do I know? Well, that's exactly how you know. You haven't heard anything, therefore, he's innocent. Has to be. That's the law. The judge instructed you earlier that a charge is not evidence. We know he's sitting here in here right now charged, accused of committing a crime but the judge has already told you the facts, not evidence. So right now he's innocent. . . . So is there anyone who does not agree that the defendant is presumed to be innocent? . . . [I]s there anybody else who just absolutely cannot right now say he's innocent as the law instructs us that we have to? Is there anybody that cannot do that? Okay, I see no hands.

Shortly thereafter during voir dire, defense counsel asked if anyone believed that because defendant was sitting in the courtroom, he must have done "something":

> [Defense counsel]: Going back to my first question when you guys were unsure as to if the defendant was guilty or not guilty. A lot of that probably is because he's sitting here in the courtroom and a lot of people think well, if he's sitting here he must have done something. Right? He was arrested. Does anybody feel that way? Okay, Juror #7, and I'm not going to call you by name to identify you so if you would just stand up, Juror #7?
>
> Venireperson #7: I think he has done something to warrant a court situation and so he's here on that situation.
>
> [Defense counsel]: Okay.
>
> Venireperson #7: I mean that's how I feel.
>
> [Defense counsel]: So you think there is something that's been—
>
> Venireperson #7: He's obviously done something that warranted him to be in a court situation.

Brown asks this court to interpret Venireperson #7's response as demonstrating his belief that Brown's presence in court meant that Brown had done something *wrong*, or was *guilty* of the offense charged. An exchange between defense counsel and another venireperson, however, highlights the distinction between the question defense counsel asked and the inference that Brown seeks to draw from Venireperson #7's response:

> [Defense counsel]: Okay. All right. Thank you very much for that, Juror #7. I saw another hand back there, yes, juror number—
>
> Venireperson #37: 37.
>
> [Defense counsel]: 37, yes. How do you feel about that?
>
> Venireperson #37: He must have been arrested.
>
> [Defense counsel]: Okay.
>
> Venireperson #37: It's pretty obvious.
>
> [Defense counsel]: He was arrested. Based on his arrest though do you think he did something wrong?
>
> Venireperson #37: I don't know that, no, but that wasn't the question asked either.[3]

Based on this comment, defense counsel acknowledged the potential confusion and rephrased the question:

> [Defense counsel]: Good point, thank you very much. So does everybody understand the distinction there then? He was arrested, we proceeded through the court process and we're here today. Is there anyone that equates just the fact that he was arrested with the fact that he must be guilty?

---

[3] In support of his argument, Brown contends that Venireperson #37 was struck based on his belief that Brown "had done something wrong to be in court." The court struck Venireperson #37 for cause, on the State's request. The State requested that Venireperson #37 be struck "for the cumulative effect of a number of his responses," including his responses that indicated that he knew and socialized with two of Brown's daughters, that he was injured in a vehicle accident and the driver was cited for driving while intoxicated, and that he had been charged with a DWI (which he did not disclose when the State asked the panel if any of them had been involved in criminal or civil proceedings). Noting Venireperson #37's remarks that "since the defendant was sitting there he must have done something wrong" (as the court characterized the remarks), the court ultimately concluded that Venireperson #37 had "too many issues involved."

There was no response to defense counsel's question. Neither Brown nor the State moved to strike Venireperson #7 either for cause or peremptorily. Venireperson #7 served on Brown's jury.

Taken in isolation, Venireperson #7's statements expressing his belief that Brown must have done something to warrant being in a court situation *could* suggest that his belief in the presumption of innocence was questionable. However, in the context of the entire examination, Venireperson #7 did not exhibit actual prejudice towards Brown; instead, he sufficiently demonstrated his willingness to follow the law and presume that Brown was innocent until proven otherwise. Venireperson #7 did not respond when defense counsel asked if anyone either did not agree that the defendant is presumed innocent or equated the fact that Brown was arrested with the fact that he must be guilty. Thus, rather than demonstrate actual bias or prejudice, it appears that Venireperson #7's response was merely the result of a poorly worded question. As Venireperson #37 pointed out, the question defense counsel asked was not whether anyone believed that Brown had done something *wrong*; her question was whether anyone believed that he had done "something."

This situation is not unlike the one this court addressed in *Pearson*. In *Pearson*, the convicted defendant sought post-conviction relief on the ground that counsel was ineffective in failing to strike an allegedly biased venireperson. *Pearson*, 280 S.W.3d at 643. During the voir dire, defense counsel asked if it would "be difficult for someone in this room to presume Mr. Pearson not guilty, knowing [the law regarding the presumption of innocence]?" *Id*. at 642. The venireperson responded that he had a "subconscious bias" because he had "always been treated fairly with the police." *Id*. The venireperson, like Venireperson #7, pointed out that

8

"[o]bviously, somebody—something has happened here" because otherwise, "they would not go to the expense of all of this . . . ." *Id*. Defense counsel followed up, noting,

> we don't have to talk about this in a vacuum. There's been an arrest, there's been accusations made, and evidence gathered, the police have submitted this case to the prosecutor, and he's been charged with a crime, correct? . . . Do you believe that everybody that is accused of a crime by the police in our country is necessarily guilty of that crime?

*Id*. The venireperson responded, "No." *Id*. And when asked if he could follow the oath and extend the presumption of innocence to Pearson, the venireperson indicated that he could. *Id*. at 643.

Thereafter, defense counsel did not move to strike the venireperson either for cause or peremptorily, and the venireperson served on Pearson's jury. *Id*. After Pearson challenged defense counsel's effectiveness based upon his failure to strike the venireperson, an evidentiary hearing was held wherein defense counsel testified that "he had no recollection as to why the defense did not challenge" the venireperson, though "he could 'certainly' see grounds for removing [the venireperson] because [he] 'indicated he was potentially biased.'" *Id*. The motion court initially denied the claim of ineffective assistance, finding that the venireperson's responses did not indicate bias and that Pearson could not demonstrate resulting prejudice. *Id*. at 644. The motion court amended its findings, however, and granted Pearson's motion for post-conviction relief, believing that such a result was mandated by this court's prior decision in *James v. State*, 222 S.W.3d 302 (Mo. App. W.D. 2007), where this court found trial counsel to have been ineffective in "failing to strike a venireperson for cause after she indicated she would draw an adverse inference from a defendant's failure to testify." *Id*. at 644, 645.

On appeal, this court reversed the motion court's decision, finding *James* inapplicable "[b]ecause the record does not show [the venireperson] to have been an unqualified juror." *Id*. at

9

646. This court held that the venireperson not only "did not express a significant bias" but also "was subsequently rehabilitated." *Id*. at 647.

Here, Venireperson #7's response is sufficiently similar to the venireperson's response in *Pearson* so as to dictate the same result. In other words, Brown simply failed to prove that Venireperson #7's responses exhibited actual bias or prejudice. Thus, the motion court did not clearly err in rejecting Brown's claim that counsel provided ineffective assistance in failing to strike Venireperson #7 for cause.

In light of the entire examination of Venireperson #7 and the venire panel in general, we cannot conclude that trial counsel's decision not to strike Venireperson #7 constituted a failure to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation. *See State v. Mahurin*, 799 S.W.2d 840, 845 (Mo. banc 1990) (finding that where a venireperson stated she wanted the defendant to "prove her innocence," but "ultimately adhered to the presumption of innocence," the trial judge was not required to strike her for cause). Thus, Brown has failed to satisfy the first prong of *Strickland*, and his claim must fail. Point denied. The judgment of the motion court is affirmed.

_____
Karen King Mitchell, Judge

Mark D. Pfeiffer, Presiding Judge, and
Lisa White Hardwick, Judge, concur.

10