David HARRISON, Appellant,

v.

STATE of Missouri, Respondent.

WD 79674

Missouri Court of Appeals, Western District.

OPINION FILED: August 15, 2017

Application for Transfer to Supreme Court Denied September 26, 2017

Application for Transfer Denied November 21, 2017

Damien De Loyola, Kansas City, MO, for appellant.

Evan J. Buchheim, Jefferson City, MO, for respondent.

Before Division One: James E. Welsh, Presiding Judge, Lisa White Hardwick, Judge and Gary D. Witt, Judge

Gary D. Witt, Judge

David Harrison ("Harrison") appeals the motion court's denial of his Rule 29.15 motion for post-conviction relief by the Circuit Court of Buchanan County. Harrison was convicted after a jury trial of one count of first-degree statutory sodomy ("Underlying Criminal Case"). On direct appeal, this Court affirmed his conviction and sentence. *State v. Harrison*, 453 S.W.3d 812 (Mo. App. W.D. 2015). In his Rule 29.15 motion, as relevant to this appeal, Harrison claims his trial counsel was ineffective for failing (1) to admit his written police statement ("Statement") into evidence, (2) to call certain witnesses during the guilt phase of his trial, and (3) to investigate, prepare, and present testimony from certain witnesses at the penalty phase of the trial. Following an evidentiary hearing, the trial court denied Harrison's motion and he now appeals. We affirm.

### Factual Background[1]

Harrison was convicted following a jury trial of one count of first-degree statutory sodomy. During the Underlying Criminal Case, Harrison was charged initially with seven counts of various sexual offenses[2] occurring over three different charged time periods all involving one victim, his step-daughter ("KM"). The trial court granted Harrison's motion for judgment of acquittal on Count VII and the remaining six charges were submitted to the jury. The jury acquitted Harrison of Counts I-V, but convicted him on Count VI, first-degree statutory sodomy. The trial was bifurcated and the jury recommended a sentence of 25-years' imprisonment on Count VI, which the judge adopted at sentencing.

During the trial, KM testified that Harrison first began sexually abusing her when the family[3] was living in Cameron,

---

1. "The facts are recited in a light most favorable to the verdict." *Ferguson v. State*, 325 S.W.3d 400, 404 n.2 (Mo. App. W.D. 2010).

2. Harrison was charged with first-degree statutory rape (Count I) and first-degree statutory sodomy alleging genital-to-anus contact (Count III) occurring between July 1, 2010, and March 11, 2011. He was also charged with first-degree statutory sodomy alleging genital-to-anus contact (Count II) and first-degree statutory rape (Count IV) occurring between March 1, 2011, and July 1, 2011. Finally, he was charged with first-degree statutory rape (Count V), one count of first-degree statutory sodomy alleging penis-to-mouth contact (Count VI), and one count of first-degree statutory sodomy alleging hand-to-genital contact (Count VII) occurring between March 11, 2011, and July 1, 2011.

3. The family household during this time consisted of: Harrison, KM's Mother ("Mother"), KM, and KM's younger brother.

Missouri, while she was in first grade [4]. Later the family moved to St. Joseph, Missouri, and they lived with Mother's parents and KM repeated the second grade. She testified that while living in St. Joseph, Missouri, Harrison had vaginal, anal, and oral intercourse with her on numerous occasions. In between second grade and third grade, the family moved to Bryce Road, where KM lived with Mother, Harrison, and her brother. She testified that the sexual abuse continued at both houses in St Joseph.

The state also introduced testimony from Mother, Linda Kerr ("Nurse Kerr"), Detective Trenny Wilson ("Detective Wilson"), and Linda Fisher. Mother testified, *inter alia*, that KM disclosed sexual abuse allegations to her the day after KM found out Harrison was not her biological father. Mother confronted Harrison, who denied the allegations, and then she contacted the authorities. Nurse Kerr, a Pediatric Nurse Practitioner, conducted a SAFE [5] exam on KM. There were no abnormal findings with the physical exam but Nurse Kerr testified that vaginal and anal tearing would normally heal within one or two days of trauma. KM's hymen was intact. Detective Wilson conducted a forensic interview with KM, where KM detailed the abuse. During the investigation Harrison voluntarily met with Detective Wilson and gave a Statement in which he denied any abuse. Fisher is KM's counselor and testified as to what KM had disclosed to her about the sexual abuse allegations.

Harrison testified in his defense that he never sexually touched or abused KM. During cross-examination, the prosecution elicited testimony from Harrison that his trial counsel had been present during the police interview and that Harrison had reviewed the Statement prior to testifying.

The jury found Harrison not guilty of Counts I-V and guilty on Count VI. During the sentencing phase of the trial, the State presented testimony from Mother and Fisher regarding the impact the abuse has had on KM. The defense presented no evidence at the sentencing phase of the trial. The court sentenced Harrison to the recommended sentence of 25-years' imprisonment. His conviction and sentence were affirmed on direct appeal. *State v. Harrison*, 453 S.W.3d 812 (Mo. App. W.D. 2015).

Harrison timely filed a *pro se* Rule 29.15 motion for post-conviction relief on April 24, 2015. The motion court appointed counsel who timely filed an amended post-conviction motion ("Amended Motion"). The motion court held an evidentiary hearing on the Amended Motion on February 17, 2016. At the evidentiary hearing, Harrison introduced into evidence his Statement and portions of the criminal transcript that were not filed with this court on the direct appeal. Additionally, trial counsel, his grandmother ("Grandmother"), and his aunt ("Aunt") testified at the evidentiary hearing. The motion court found that trial counsel was experienced and had provided Harrison with an "excellent defense" that resulted in Harrison's acquittal on five of the six counts charged. The motion court also found Harrison failed to show that his conviction was due to failure of trial counsel rather than simply Harrison's guilt of the offense. This appeal followed.

### Standard of Review

■ This Court will affirm the motion court's judgment unless its findings and conclusions are clearly erroneous. Rule

---

4. Harrison and KM's Mother married in 2005 and then moved the family to Cameron, Missouri, where KM attended first and second grades.

5. SAFE stands for Sexual Assault Forensic Examination.

29.15(k). "Findings and conclusions are deemed clearly erroneous only if, after reviewing the entire record, we are left with the definite and firm impression that a mistake has been made." *Eichelberger v. State*, 134 S.W.3d 790, 792 (Mo. App. W.D. 2004) (quoting *Adams v. State*, 951 S.W.2d 722, 724 (Mo. App. W.D. 1997)). The motion court's findings are presumed correct. *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991). The movant bears the burden of proving the asserted "claims for relief by a preponderance of the evidence." *Brown v. State*, 450 S.W.3d 450, 452 (Mo. App. W.D. 2014). "This [C]ourt will not supply findings of fact and conclusions of law by implication from the court's ruling." *White v. State*, 57 S.W.3d 341, 343 (Mo. App. E.D. 2001).

### Analysis

Harrison raises six points on appeal. As there is substantial overlap between points one and two, three and four, and five and six, respectively, we shall discuss them in three points.

### I.

In Points Relied On One and Two, Harrison argues that the motion court clearly erred when it found trial counsel had no basis upon which to admit Harrison's Statement into evidence. Additionally, he argues that the motion court erred in finding Harrison was not prejudiced by trial court's failure to admit the Statement into evidence.

To be entitled to post-conviction relief for ineffective assistance of counsel, Harrison must show by a preponderance of the evidence that his trial counsel failed to meet the *Strickland* two-prong test in order to prove his claims. *Davis v. State*, 486 S.W.3d 898, 905-06 (Mo. banc 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The first part of the test requires Harrison to show that his trial counsel's per-

formance was deficient by falling below an objective standard of reasonableness based on the customary skill and diligence of a reasonably competent attorney under similar circumstances. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. Once it is established that trial counsel's performance was deficient, he must then prove that he was prejudiced by trial counsel's deficient performance. *Id.* at 687. To satisfy the prejudice prong, Harrison must show "a reasonable probability that, but for the trial counsel's alleged deficiencies, the result of the proceedings would have been different." *Edgar v. State*, 145 S.W.3d 458, 461 (Mo. App. W.D. 2004). If either part of the test is not met, the claim for ineffective assistance of counsel must fail and we need not consider the other prong. *Id.*

■ Harrison argues that his trial counsel was ineffective when he failed to introduce Harrison's Statement into evidence after the State "opened the door" to its admissibility during their cross-examination of Harrison. Harrison alleges that the State put the Statement at issue and, therefore, "opened the door" to its admission when it asked Harrison during cross-examination whether his trial counsel was present during his police interview and whether he reviewed the Statement before testifying. Specifically, Harrison argues that the State infused the Statement with relevance and that it was admissible to dispel the negative inferences that the State created about him because the cross-examination involved Harrison's review of the entire record.

The State contends that the Statement was inadmissible hearsay because there was no merit to Harrison's claim because he volunteered on direct-examination that he was accompanied by trial counsel at the police interview and that by asking whether he had reviewed the Statement before testifying did not make its contents admis-

sible. Further, although trial counsel testified at the evidentiary hearing that he had no trial strategy for not admitting the Statement into evidence, the State argues that the record suggests a strategy did exist because portions of the Statement were incredibly prejudicial and not something trial counsel would have wanted the jury to see. We agree.

We agree that Harrison offers no foundation to establish that the State "opened the door" to the Statement's admissibility. Trial counsel cannot be found ineffective for failing to offer inadmissible evidence. *McLaughlin v. State*, 378 S.W.3d 328, 346 (Mo. banc 2012). A party "opens the door" to a line of questioning when they inquire into part of an act or occurrence. *State v. Newsom*, 299 S.W.3d 784, 789 (Mo. App. S.D. 2009). "[T]he opposing party is entitled to inquire into other parts of [the act or occurrence] in order to rebut possible inferences that may be drawn from an incomplete version presented by the adversary or to prove the party's own version of events." *Id.*

In this case, the State merely asked Harrison whether he had counsel present when he gave his statement to police and whether he had reviewed his statement immediately prior to testifying. The mere mention of the existence of a statement is insufficient to open the door to the admission of the statement's contents. *See State v. Debler*, 856 S.W.2d 641, 649 (Mo. banc 1993) ("[s]uch minimal discussion does not raise a sufficient negative inference to justify admitting the statement to rebut the alleged inference.") The State did not paint an "incomplete" picture of Harrison's Statement merely by referencing its existence and his review.

Further, consistent statements are generally inadmissible when they simply serve to bolster that witness's trial testimony. *State v. McClendon*, 895 S.W.2d 249, 252 (Mo. App. E.D. 1995). "[T]he general rule is that self-serving statements are hearsay [. . .]" *Gamble v. Browning*, 379 S.W.3d 194, 207 (Mo. App. W.D. 2012). "'Opening the door' occurs when either party introduces part of an act, occurrence or transaction." *State v. Dancy*, 541 S.W.2d 35, 37 (Mo. App. E.D. 1976). "Improper bolstering occurs when out-of-court statements are offered solely to duplicate or corroborate trial testimony." *State v. Gaines*, 316 S.W.3d 440, 450 (Mo. App. W.D. 2010). "Counsel will not be found ineffective for failing to introduce cumulative evidence, which has no bearing on the outcome of the case." *Williams v. State*, 205 S.W.3d 300, 314 (Mo. App. W.D. 2006). In this case, Harrison's Statement was not admissible because it was merely duplicative of his trial testimony. He points to no additional facts or information which would have been helpful to his defense that were contained within the Statement to which he was not able to otherwise testify to during trial.

Additionally, although trial counsel testified at the evidentiary hearing that he had no trial strategy for failing to admit the Statement into evidence, we agree with the State that the record suggests such a strategy did exist. In Harrison's Statement, he wrote, *inter alia*,

"[Mother] and I did have pornographic DVD's and sexual toys in the night stand of [Mother]'s side of the bed.";

". . . and sometimes if I didn't have my clothes with me [leaving the single bathroom in the home after bathing], I would run from the bathroom to my room and K[M] would see me naked. In the last three years, she maybe saw me do that four times."; "When K[M] was about three years old K[M] would take showers with me and also my wife. My penis could have touched her butt, when I was picking her up or holding her against my chest, but I was not aroused. It did not go inside her butt. It just grazed her."

Although Harrison maintains his denial of any sexual abuse or touching contained within the Statement would have been beneficial to his defense, it was also reasonable for trial counsel to not want the jury to see the portions of the Statement where he acknowledged pornography and sex toys in the home, his appearing naked in front of the child, and showering naked with the child.

Harrison failed to establish that trial counsel's actions fell below the accepted levels of performance in failing to attempt to admit the Statement, therefore, we need not address the issue of prejudice. *Edgar*, 145 S.W.3d at 461. Points Relied On One and Two are denied.

## II.

In Points Relied On Three and Four, Harrison argues that the motion court clearly erred when it found that he failed to establish Grandmother's and Aunt's testimonies would have provided him with a viable defense and that he was not prejudiced by his trial counsel's failure to introduce Grandmother's and Aunt's testimonies during trial.

To prevail on a claim of ineffective assistance of counsel for failure to call a witness, Harrison must show that: "(1) trial counsel knew or should have known of the existence of the witness, (2) the witness could be located through reasonable investigation, (3) the witness would testify, and (4) the witness's testimony would have produced a viable defense." *Hutchison v. State*, 150 S.W.3d 292, 304 (Mo. banc 2004) (citing *State v. Harris*, 870 S.W.2d 798, 817 (Mo. banc 1994)). "When the testimony of the witness would negate an element of the crime for which a movant was convicted, the testimony provides the movant with a viable defense." *Hays v.*

*State*, 360 S.W.3d 304, 310 (Mo. App. W.D. 2012). "Where a witness's testimony would not unqualifiedly support the defense, counsel's decision not to call the witness does not constitute ineffective assistance." *Rutlin v. State*, 435 S.W.3d 126, 132 (Mo. App. E.D. 2014).

Harrison argues that there is often an implicit vouching for the veracity of a child's disclosure by the State's witnesses when those witnesses testify about the child's disclosure. He alleges that Grandmother's and Aunt's testimonies would not be cumulative with Mother's testimony because they are of a completely different character than Mother's testimony. Because of the lack of physical evidence, Harrison contends the defense never could actually prove he did not sexually abuse KM, but could only establish a reasonable doubt and that Grandmother's and Aunt's testimonies would have gone toward establishing a reasonable doubt.

The State argues, and the motion court agreed, that the testimonies of Grandmother and Aunt would not have provided a viable defense. Additionally, the State argues that although trial counsel testified at the evidentiary hearing that he had no trial strategy for not calling Grandmother and Aunt as witnesses, the record suggests that a strategy existed. Specifically, the State argues that the record establishes that trial counsel considered admitting evidence showing KM's behavior did not suggest she was being sexually abused and that trial counsel offered that evidence through Mother's testimony. We agree.

The motion court did not err in finding that Harrison's trial counsel was not ineffective for failing to call Grandmother and Aunt as witnesses. It is undisputed that Harrison met the first three elements,[6] however he failed to establish the

6. (1) Trial counsel was aware of Grandmother and Aunt; (2) Trial counsel was able to locate

fourth element that the witness's testimony would have produced a viable defense. *Hutchison*, 150 S.W.3d at 304. While Grandmother and Aunt may have testified as to Harrison's good qualities and that they never witnessed anything inappropriate between Harrison and KM, both had spent minimal time around Harrison and KM together during the relevant time frame. Mother, who testified for the State and was divorced from Harrison, spent far more time observing Harrison and KM together and had already testified that she saw no indication that Harrison was abusing KM. Grandmother and Aunt both testified at the evidentiary hearing that they only saw KM with Harrison a few times a month. This, coupled with the fact that Harrison points to no additional information to which they would testify which was not already before the jury, demonstrates that these witnesses would not have given Harrison a viable defense. The jury already heard testimony that there were no outward signs that Harrison was sexually abusing KM. Without pointing to what additional information or actual defense these witnesses would have provided, we cannot say that the motion court erred in finding that trial counsel was not ineffective for failing to call them. *See, generally, Johnson v. State*, 406 S.W.3d 892, 908-09 (Mo. banc 2013) (motion court did not err in finding that counsel was not ineffective for failing to offer testimony of victim's mother that she believed movant was a "good and loving father" to he and victim's daughter).

Further, the motion court found that trial counsel provided an "excellent defense," obtaining a not-guilty verdict for Harrison on five of the six counts charged. We find that the motion court did not err

in finding that trial counsel was not ineffective for failing to call Grandmother and Aunt to provide cumulative testimony to one of the prosecution's witnesses, Mother. Points Relied On Three and Four are denied.

### III.

In Points Relied On Five and Six, Harrison argues that the motion court clearly erred when it found that trial counsel's determination to not engage in any investigation into the possibility of presenting mitigation testimony at the sentencing phase of the trial from Grandmother and Aunt and that decision to offer no evidence to the jury at the sentencing phase was reasonable and that Harrison failed to establish the prejudice with respect to trial counsel's failure to investigate and present Grandmother's and Aunt's testimonies to the jury.

 Harrison may only prevail on a claim of ineffective assistance based on trial counsel's failure to investigate and present mitigation witnesses by proving that: "(1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through a reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense." *Vaca v. State*, 314 S.W.3d 331, 335-36 (Mo. banc 2010). To satisfy the first prong, Harrison must demonstrate that trial counsel's failure to call "witnesses at his sentencing hearing fell below an objective standard of reasonableness." *Cherco v. State*, 309 S.W.3d 819, 825 (Mo. App. W.D. 2010). To demonstrate prejudice, he must establish that there is a reasonable probability that, but for trial counsel's error, he

---

Grandmother and Aunt, as they attended almost all trial hearings and trial counsel was in frequent communication with both women; and (3) Both women testified at Harrison's

evidentiary hearing that they would have testified if they had been asked to by trial counsel.

would have received a lesser sentence. *Eichelberger*, 134 S.W.3d at 792. "If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance of counsel." *State v. Jones*, 885 S.W.2d 57, 58 (Mo. App. W.D. 1994).

▪ Harrison argues that the motion court clearly erred in finding that trial counsel was not ineffective for failing to investigate and present Grandmother and Aunt as witnesses during the sentencing phase of the trial. Specifically, he alleges that the motion court's finding that trial counsel made a reasonable determination by not investigating into the possibility of presenting mitigation testimony from Grandmother and Aunt was clearly erroneous, as it is contrary to law. Harrison further contends that his proposed investigation was minimal, only involving trial counsel speaking to Grandmother and Aunt, asking them if they would be willing to testify on Harrison's behalf, and then reviewing both of their testimonies with them.

▪ The motion court did not err in finding that Harrison did not meet his burden of establishing that trial counsel was ineffective for failing to investigate, prepare, and present testimony from Grandmother and Aunt. It is undisputed that Harrison established the first three elements, but on this record he fails to establish the fourth element to prevail on a claim of ineffective assistance of counsel for failing to call a witness. See *supra* Section II. A vague notion that failing to call character witnesses is prejudicial is not sufficient to overcome the presumption that counsel acted under reasonable trial strategy. *See Eichelberger*, 134 S.W.3d at 793 (motion court did not err in finding counsel was not ineffective for failing to call character witnesses where "[n]o evidence was presented at the evidentiary hearing to contradict the reasonableness of [trial strategy] other than [defendant's] own testimony that he believed live testimony would have had a positive impact on the court's decision.").

This Court agrees with the motion court that because Harrison does not explain how or why Grandmother's or Aunt's testimonies would have resulted in a lesser sentence these Points must fail. Harrison does argue that their testimonies would have addressed his positive qualities, this Court agrees with the motion court that due to the nature of Grandmother's and Aunt's relationship with Harrison, it is reasonable for the jury to assume their testimonies would favor Harrison's good character regardless of his conviction. Because of this, we disagree with Harrison that a reasonable probability exists that he would have received a lesser sentence if trial counsel had investigated and presented Grandmother and Aunt as witnesses before the jury.

Further, Harrison again fails to demonstrate that he was prejudiced from trial counsel's failure to call Grandmother and Aunt as witnesses. Harrison argues that Grandmother's and Aunt's testimonies would have humanized him to the jury and allowed the jury to see that he was more than just the crime charged. This humanization, he contends, would have resulted in a lesser sentence. The jury already convicted him of the crime charged, there is no indication that having testimony that Harrison's relatives still believed him to be a good person would have resulted in a lighter sentence.

Further, Aunt testified at the motion hearing that Harrison liked to spend time with children instead of adults at family outings. This testimony, at best, would have been only partially supportive of Harrison's claim of innocence. As such, we

cannot say that he was prejudiced by its exclusion.

Harrison failed to establish either prong established by *Strickland*, and therefore Points Relied On Five and Six are denied.

## Conclusion

The judgment of the motion court, denying Harrison's Rule 29.15 motion for post-conviction relief is hereby affirmed.

All concur

