

# Missouri Court of Appeals

## Southern District

### Division Two

ROBERT L. CAMPBELL, )
            )
    Movant-Appellant, )
            )
v. )     No. SD35946
            )
STATE OF MISSOURI, )     **Filed: January 14, 2020**
            )
    Respondent-Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

Honorable Gayle Crane

## AFFIRMED

Robert L. Campbell ("Movant") appeals the motion court's denial, after an evidentiary hearing, of Movant's amended Rule 29.15[1] motion for post-conviction relief ("the motion"). A jury found Movant guilty of two counts of second-degree murder and assessed punishment at life imprisonment on each count.[2] *See* section 565.021.[3] In two points on appeal, Movant claims the motion court clearly erred in denying the motion because trial counsel was ineffective for requesting and submitting lesser-included offense instructions to the jury. Finding no merit in that claim, we affirm.

**Standard of Review**

---

[1] All rule references are to Missouri Court Rules (2019). We have independently verified the timeliness of Movant's post-conviction motions as directed in ***Moore v. State***, 458 S.W.3d 822, 825 (Mo. banc 2015).

[2] The trial court ordered the sentences to run consecutively.

[3] Unless otherwise indicated, all statutory citations are to RSMo 2016.

1

Appellate review of a motion for post-conviction relief is "limited to a determination of whether the motion court's findings and conclusions are clearly erroneous." *Eastburn v. State*, 400 S.W.3d 770, 773 (Mo. banc 2013) (citation omitted); Rule 24.035(k). "Findings and conclusions are clearly erroneous if, after reviewing the entire record, this Court is left with the definite and firm impression that a mistake has been made." *Eastburn* at 773, (citation omitted). The movant must show by a preponderance of the evidence the motion court clearly erred. *Harrison v. State*, 531 S.W.3d 611, 616 (Mo. App. 2017) (citation omitted).

. . . .

To be entitled to post-conviction relief for ineffective assistance of counsel ["IAC"], [Movant]'s claim must prove "by a preponderance of the evidence that (1) trial counsel failed to exercise the level of skill and diligence that reasonably competent counsel would exercise in a similar situation and (2) the movant was prejudiced by that failure." *Dorsey v. State*, 448 S.W.3d 276, 287 (Mo. banc 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "If a movant fails to satisfy either prong of the [*Strickland*] test, he or she is not entitled to post-conviction relief." *Creighton v. State*, 520 S.W.3d 416, 422 (Mo. banc 2017) (citation omitted).

*McClure v. State*, 543 S.W.3d 54, 56 (Mo. App. W.D. 2018).

The motion court's judgment is presumed correct, and Movant has the burden of demonstrating reversible error. ***McLaughlin v. State***, 378 S.W.3d 328, 336-37 (Mo. banc 2012).

**The Evidence**

Movant, age 72, was charged with two counts of first-degree murder for ordering the killing of his nephew, Russell Porter ("Russell"), and Russell's wife, Rebecca Porter ("Rebecca").[4] The State charged that Movant, "acting with one or more persons," caused the Porters' deaths on April 18, 2011, "by offering consideration to one or more persons to kill" them. The State's theory of the case was that Defendant contracted with his brother-in-law, Tony Friend, to kill the Porters while Defendant was out of town driving a truck, which

---

[4] We use first names for some of the persons referenced in this opinion solely for clarity's sake; we intend no disrespect or familiarity.

would provide Defendant with an alibi. The plan was to have the Porters kidnapped and killed outside of their home on the theory that "if there's no body, there's no crime."

Russell was the son of Defendant's sister. Russell and Defendant had recently been granted mutual orders of protection against each other.[5] The State alleged that there was "[b]ad blood" between the two men because Defendant believed that Russell was lazy and he and Rebecca were living on the Campbell family farm where Defendant had been raised despite Russell never having done anything to help with the farm. There had been heated altercations between the two men leading up to the Porters' deaths, including an incident in which Russell charged at Defendant with a 20-foot long pipe, and Russell had used a board with nails in it to demarcate property lines.

Approximately three weeks after the orders of protection were granted, late in the evening on April 18, 2011, police responded to the Porters' home when Rebecca's daughter reported being concerned about not having heard from her. Defendant was driving a truck in Texas at that time. Upon entering the Porters' home, police found that a screen over the kitchen window had been cut, bleach had been poured on the kitchen and dining room floors, the bedding had been removed from the bed, the mattress was askew on its box springs, and the Porters were not there.

The Porters' bodies were eventually found in July 2011 in a remote area of Taney County. Both had been shot in the head. Phillip Friend ("Phillip"), the son of Tony Friend ("Tony"), testified that he was his father's "right hand man" in crime. At his father's behest, Phillip, along with a group of people that included his father, planned to kidnap the Porters from their home. The plan was formulated during the course of two meetings that took place in Tony's apartment. At first, the plan was to kidnap the Porters and "take them to

---

[5] Rebecca had also applied for an order of protection against Defendant, but that request had not been granted.

birthdays[,]" meaning to kill them. The plan was allegedly changed to just kidnapping the Porters and scaring them into moving, but Phillip doubted that it was just a scare tactic. The kidnapping had to occur before the 19th of April because Defendant was returning from the road that day. Phillip said the plan involved "[m]urder and $100,000." Phillip and the others kidnapped the Porters from their home, drove them to a remote location approximately two hours away, where Tony then walked the Porters into the woods and shot them.

Defendant's cellmate testified that Defendant confessed to him after "prayer circle" "that he hired his brother-in-law [Tony] to kill his sister's boy" while Defendant was out of state driving a truck. Defendant's son testified that the dispute between his father and Russell had escalated to the point that Defendant said that Russell's "days are numbered[.]" Defendant also told his daughter, while she was wearing a wire for the police, that Russell "was a pain in the ass[,]" and had been "snitching" on them "all the time." Defendant said "[a]ll of us had a reason to do it[.]" Phillip also testified that Defendant approached him while they were both in jail and told him that he would "take care of" whoever was putting Defendant's name out there as having been involved in the murder of the Porters.

Trial counsel requested and submitted lesser-included offenses on both counts for second-degree murder, second-degree felony murder predicated upon felonious restraint, voluntary manslaughter, first-degree involuntary manslaughter, and second-degree involuntary manslaughter. The jury returned guilty verdicts of murder in the second degree, based upon felony murder, on each count.[6] Movant claims that trial counsel was ineffective for requesting and offering instructions on the lesser-included offenses, including felony

---

[6] We affirmed Movant's convictions and sentences on direct appeal in an unpublished Order and Statement in *State v. Campbell*, No. SD34647 (Mo. App. S.D. Feb. 7, 2018).

4

murder, and that "[h]ad trial counsel not requested and submitted lesser offenses, there is a reasonable probability the outcome of the case would have been different."

The motion court found that trial counsel testified that: (1) he believed Movant would likely be found guilty of murder in the first degree if the jury were not instructed on lesser offenses; (2) Movant never directed him not to submit lesser instructions; and (3) trial counsel might be found ineffective for failing to request lesser offenses in the likely event that Movant had been convicted of first-degree murder. Relying on *McNeal v. State*, 412 S.W.3d 886 (Mo. banc 2013), the motion court found that "the failure to provide the jury with the option of a lesser-included offense [supported by the evidence] deprives the defendant of a fair trial, even if the jury ultimately convicts the defendant of the greater offense." *Id.* at 892. The motion court concluded that, "[a]bsent any showing that Movant instructed [trial counsel] to not offer instructions on the lesser included offenses, the record is clear that [trial counsel] acted as a reasonably competent attorney when he did, in fact, offer the lesser included offense instructions."

Movant, who did not testify in support of his motion, now appeals.

**Analysis**

*Points 1 and 2*[7]

Movant claims that the motion court clearly erred in denying the motion because trial counsel was ineffective for requesting and submitting instructions for lesser-included offenses, including for second-degree felony murder, in that trial counsel's submission of the same was not part of a strategic decision, ignored specific facts of Movant's case, and

---

[7] Movant raised his IAC claims in two separate points in the motion, and he does so again on appeal. Because the two points are substantially the same and rely on the same law and facts – and the motion court denied them "[f]or the very same reasons[,]" – we address them together.

5

resulted in prejudice to Movant because Movant was convicted of felony murder, a lesser-included offense. We disagree.

We find no Missouri case law touching upon an accused's alleged right *not* to submit a lesser-included instruction, and Movant cites no controlling authority in support of his claim. Rather, it is well-established that

> "[i]f the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it." *State v. Avery,* 120 S.W.3d 196, 200 (Mo. banc 2003). Therefore, "[i]f the evidence supports differing conclusions, the judge must instruct on each." *State v. Pond,* 131 S.W.3d 792, 794 (Mo. banc 2004). Doubt as to whether to instruct on the lesser-included offense is resolved in favor of giving the lesser-included offense instruction. [*State v.*] *Yacub,* 976 S.W.2d [452,] 453 [(Mo. banc 1998)].

*McNeal*, 412 S.W.3d at 890.

Citing *Oplinger v. State*, 350 S.W.3d 474, 477 (Mo. App. S.D. 2011), Movant asserts that "trial counsel must make an informed decision whether to request a lesser-included offense instruction." Movant argues that trial counsel here did *not* make an informed decision on whether to request lesser-included offenses. Instead, Movant claims that trial counsel did so based solely on a misunderstanding of the law, in that trial counsel testified at the evidentiary hearing that he believed himself "duty-bound to request all lesser-included offense instructions."

While trial counsel did testify that "I've been told for the last 16, 17 years that I'm duty bound to ask for lessers[,]" he also provided the following testimony.

> Q     [Trial counsel], having heard your testimony, it sounds like you gave the lesser instructions; murder second degree, felony murder second degree and on down, because you believed that was in your client's best interests?
>
> A     I did.
>
> Q     Because you were afraid he might be found guilty of murder first degree?

6

A       Very much so.

Q       And, in fact, the jury, when they recommended the sentences, recommended life sentences for your client even on the second degree murder; isn't that true?

A       That's my recollection.

Q       Did [Movant] ever tell you not to instruct on lessers?

A       No[.]

                    . . . .

Q       Would your testimony be that you believe there was a reasonable probability he might be found guilty of murder in the first degree had you not instructed on lessers?

A       Yes.  I was shocked that they came back – aside from the single hold out who delayed deliberations substantially, I was pretty shocked they came back on a lesser.

That testimony constitutes substantial evidence supporting the proposition that trial counsel had a reasonable trial strategy for requesting lesser-included instructions.  Primarily, trial counsel believed that Movant would be convicted of first degree murder – which carried a mandatory sentence of life without parole – as he "thought there was plenty for deliberation."  *See* section 565.020.2.  As Movant concedes, "there was evidence from which a jury could find deliberation by [Movant.]"  The facts proven by the State, as outlined here and as set forth in ***Campbell***, support trial counsel's belief.  Thus, trial counsel was acting reasonably by offering the lesser-included alternatives in "trying to get [Movant] the lowest possible sentence."[8]

Movant also claims that submission of the lessers was unreasonable under the circumstances of the case and that trial counsel should have employed an "all or nothing"

---

[8] Whereas murder first carries a required sentence of life in prison without parole, murder second is punishable by as little as ten years in prison.  *See* section 565.021.2.

7

strategy due to Movant's advanced age and Movant's belief that the evidence to convict him of murder in the first degree was weak. Based upon those premises, Movant concludes that the jury would have found him not-guilty but for the availability of lesser-included offenses as an alternative.

While "[t]he decision to pursue an 'all-or-nothing' defense strategy has been consistently upheld as reasonable trial strategy[,]" here trial counsel firmly believed that Movant would be convicted of first-degree murder if the jury were *not* given alternatives. *McCrady v. State*, 461 S.W.3d 443, 450 (Mo. App. E.D. 2015) (internal citations omitted). Further, Movant cites no evidence supporting his assertion that the jury would have acquitted him of first-degree murder if no lessers had been submitted. He simply claims that "two convictions for any of the lesser-included offenses would result in de facto life-without-parole sentences given [Movant]'s advanced age and poor health." In any event, trial counsel assessed the strength of the State's case and submitted the lessers in the hope that Movant "didn't get convicted of murder in the first degree and a *guaranteed* life without parole sentence." (Emphasis added.) "The relative strength or weakness of the state's case is significant in deciding if any deficiencies in trial counsel's performance were prejudicial." *Walker v. State*, 34 S.W.3d 297, 303 (Mo. App. S.D. 2000).

The record supports the motion court's finding that "[trial counsel] indicated that it was his belief [Movant] would likely be found guilty by the jury of murder in the first degree if the jury were not instructed on lesser offenses." Given the applicable law on this issue – and the evidence of deliberation presented at Movant's trial – the trial court could reasonably find that "[trial counsel]'s strategy was well-within the parameters of conduct constituting that of a reasonably competent attorney[.]"

The motion court did not clearly err in denying the motion. Movant's points are denied, and the presumed-correct judgment of the motion court is affirmed.


DON E. BURRELL, OPINION AUTHOR –

JEFFREY W. BATES, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS